## ROACH *v.* WOODALL.

### (*Nashville.* February 11, 1892.)

1. NEGOTIABLE INSTRUMENTS. *Holder as collateral an innocent holder.*

   The *bona fide* holder of a negotiable note transferred to him before its maturity, as collateral security, upon a valid and sufficient consideration accruing at the time of its transfer, will be protected as an innocent holder for value in due course of trade.

   Case cited and approved: Nichol *v.* Bate, 10 Yer., 429.

   Cited and distinguished: Craighead *v.* Wells, 8 Bax., 38.

2. SAME. *Holder by wrongful transfer not protected.*

   The holder of a negotiable note cannot retain it against the payee, though otherwise entitled to protection as an innocent holder, where he took the note, being payable to order, from a person other than the payee or an indorsee; the payee never having in fact indorsed the note or authorized its transfer, although his indorsement was forged thereon.

   Case cited and overruled: Duke *v.* Hall, 9 Bax., 282.

3. SAME. *Infant's indorsement.*

   It is strongly intimated, though not authoritatively decided, that an infant's indorsement of a negotiable note is void in every case. But if not void, it is clearly voidable, the indorsee being chargeable with notice of the indorser's infancy.

   Case cited and approved: McMinn *v.* Richmond, 6 Yer., 9.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. ANDREW ALLISON, Ch.

MATT. W. ALLEN and STOKES & STOKES for Roach.

CHAMPION, HEAD & BROWN for Woodall.

SNODGRASS, J. Isaac Whitworth sold to J. B. and William Hartman a tract of land, taking in part consideration therefor the following note, payable to his minor son:

"JANUARY 21, 1878.

"Thirteen years after date we promise to pay to the order of Milton J. Whitworth five hundred dollars, being fourth payment for a tract of land. Value received.

"JOHN B. HARTMAN,
"WILLIAM HARTMAN."

The note subsequently came into the possession of Defendant Woodall, as guardian of the minor payee.

Woodall delivered the note to Defendant W. I. Cherry in 1889, and before it was due, as collateral security for Cherry's indorsement of Woodall's note in bank for $500, which last note Defendant Cherry subsequently paid as indorser.

At the time the note in controversy was delivered it had indorsed upon it the name of Milton J. Whitworth, the payee. Cherry did not know Whitworth, or that he was a minor at the time, nor that Woodall was his guardian. Woodall did not transfer as guardian, or pretend to do so.

He claimed to be a purchaser of the note from Whitworth, and to own the note, and under this claim delivered it, thus indorsed, to Cherry.

The indorsement was a forgery; and after the death of Milton J. Whitworth, who died before he became of age, S. H. Roach administered upon his estate, and filed this bill to recover of Defendant Cherry the note, and to collect it of the Defendants Hartman.

Cherry defended upon the ground that he was an innocent purchaser for valuable consideration, and without notice. The Chancellor decreed in favor of complainant, and Cherry appealed.

Assuming that Cherry took the note as consideration for his indorsement of Woodall's note at the time or before the delivery of the Whitworth note to him, he would be a holder for value and in due course of trade. *Nichol & Hill* v. *Bate,* 10 Yer., 420.

A different result would follow if received after he had incurred the liability, and took it merely as security for a pre-existing debt. *Craighead* v. *Wells,* 8 Bax., 38.

The complainant insists that the testimony of Mr. Cherry is not sufficiently specific to show that he in fact received the note in consideration of the indorsement; but that all he says may be taken as true, and yet it may have been delivered to him to secure him after he had incurred this liability.

Waiving this question, and for the purposes of

this opinion treating his evidence as affirmative—
that the indorsement was made upon this con-
sideration—we consider the effect of the deliv-
ery to Cherry of this note with the forged in-
dorsement of the payee, leaving for the time out
of view the fact that the supposed indorser was a
minor.   Does such a holder obtain title to the
note, and can he defeat the true owner, the payee,
or his representative, who seeks to recover it from
him?   It is assumed in argument of defendant's
counsel that this proposition was decided in the
affirmative by our predecessors in this Court in
1878.   *Duke* v. *Hall*, 9 Bax., 282.

As stated in the opinion of the Court in that
case, the note in controversy was one made by
A. D. Hurt payable to Allen Deberry, and by him
"indorsed to J. W. Glass."   This note, without
indorsement by J. W. Glass, was placed by him
in the safe of J. E. Glass.   The latter, without
authority, indorsed the name of J. W. Glass upon
it and transferred it to an innocent purchaser or
holder for value.   This holder transferred to an-
other.   The suit was by the assignee of J. W.
Glass, the real owner, against the last purchaser,
and it was held that he was not entitled to re-
cover.   The statement in the opinion is that the
note was "indorsed by the payee to J. W. Glass."
Whether it is meant that this indorsement was in
terms to him or whether it was indorsed in blank
and delivered to him, is not clear, but treating
the language quoted as showing that it was not

14—7 P

indorsed in blank, but to J. W. Glass by name, it put the title in him, and required his indorsement to pass it out of him, and this is elsewhere assumed in the opinion. Still it is not the exact case presented here, because there the note was first properly indorsed by the payee to another, while here there never was any indorsement put upon it by the payee. But regarding that indorsement as to J. W. Glass by name, as it purports fairly to have been in the language of the opinion, there is no difference in principle in that case and this, because there as here it was payable to a particular person or his order—in that case by indorsement, in this on its face; and if that case is correctly decided, it is conclusive of this. In that case Judge Freeman, delivering the opinion, quoted from Kent the principle assumed to authorize it, as follows:

"The *bona fide* holder can recover on the paper, and gets a good title to it, though it come to him from a party who had stolen or robbed it from the true owner, provided he took it innocently in the due course of trade for a valuable consideration not overdue, and under circumstances of due caution, and he need not account for his possession unless suspicion is raised." 3 Kent, 78, 79.

The quotation was a very clear and accurate statement of the law as recognized generally by text-writers and Courts where it applies; but it was not made by the author in reference to paper

stolen from the payee before indorsement by him, or to paper which required indorsement to be made before title could be passed, and which was subsequently forged, but related to negotiable paper payable to bearer, or indorsed in blank before stolen, and thus made payable to bearer, in which case the thief had nothing to do but deliver the paper, with or without further indorsement, to a *bona fide* purchaser, as the preceding part of the paragraph (not quoted by Judge Freeman) clearly shows. That part was as follows:

"Possession is *prima facie* evidence of property in negotiable paper *payable to bearer* or *indorsed in blank;* and the bearer, though a mere agent, or the original payee, when the indorsement is in blank, may sue on it in his own name without showing title, unless circumstances appear creating suspicion."

When Mr. Kent adds, "the *bona fide* holder can recover upon *the* paper," the reference is to *such* paper—that is, to paper transferable by delivery, payable to bearer, or having upon it a valid indorsement in blank when stolen—and it is only to such paper that the rule applies under all the authorities. The distinction is very clear between the transfer of such paper and the attempt to transfer paper stolen or obtained without authority, not payable to bearer or indorsed in blank when stolen or so obtained. In the latter case no title can be passed to an indorsee or transferred by reason of a forged indorsement, as against the party whose indorsement is forged. Daniel on

Neg. Insts., Secs. 677, 1354, 1469; Parsons on Notes and Bills, Vol II., p. 284; Story on Prom. Notes, Secs. 381, 382, 383.

Authorities on this point need not be multiplied in citation—there are none to the contrary. The distinction was overlooked in the case of *Duke* v. *Hall*, 9 Baxter, and the holding on this point in that case was not the law, and to that extent it is overruled.

Another question decided by the Chancellor was that the indorsement might be avoided by complainant and the note recovered because of the minority of the payee—the supposed indorser.

Under the decisions in this State and others the indorsement might well have been held to be void.

Mr. Story, in his work on Promissory Notes, Secs. 77–80, puts upon the same ground the minor's incapacity to indorse and make a promissory note, and shows that there is a conflict of opinion as to whether such act is void or voidable.

The Court of this State has ranged itself with those holding the making of a negotiable note by a minor, even for necessaries, a *void* act, and this, after full discussion, upon the weight of authority. *McMinn* v. *Richmond*, 6 Yer., 9.

Mr. Story thought the weight of authority preponderated in favor of holding promissory notes given or indorsed by an infant voidable only. Sec. 78. But, treating it from this stand-point, he declares the law to be well settled that not only may the infant avoid it and intercept payment to

Roach *v.* Woodall.

the indorsee, but by giving notice to the antecedent parties of his avoidance, furnish to them a valid defense against the claim of the indorsee. Sec. 80.

It would seem clear, then, that whether such indorsement were void or voidable, the minor or his representative might avoid it and recover the note of the transferee, and that this is not only a well-settled but a just rule of law; for a transferee who receives by delivery merely from bearer a note with the name of another indorsed upon it, ought to be charged with notice who that indorser was, and whether a person who could in law bind himself by an indorsement. If he does not in fact know the indorser, he would hardly predicate any thing of an indorsement, or rely on it without inquiry. Such inquiry would disclose the minority of the indorser, and, consequently, it might well be holden that the transferee was chargeable with notice of the invalidity of the indorsement.

But as the minor did not in fact indorse the note in controversy, these questions do not necessarily arise or call for decision, and we therefore rest the decision upon the ground already stated—the invalidity of the transferee's title under the forged indorsement.

The decree is affirmed with cost.