.Bank v. Chapman.

JEFFERSON BANK OF ST. LOUIS *v.* CHAPMAN-WHITE-LYONS COMPANY.

(*Knoxville.* September Term, 1909.)

1. **CORPORATIONS.** Vice president may execute note in name. of corporation empowered to issue notes.

Where the charter of a corporation authorizes it to issue notes, and the by-laws authorize the president to sign contracts, and only require the attestation of the secretary to such documents as required the corporate seal, and further authorize the vice president to perform the duties of the president in the absence or disability of the president; and where the president of the company resides in another county, and the actual management of the business is generally left to the vice president, he (the vice president) has the right, under the said charter and by-laws, to execute a note in the name of the company. (*Post, pp.* 418-420, 424, 425, 429-431.)

Case cited and distinguished: Roach v. Woodall, 91 Tenn., 213.

2. **BILLS AND NOTES.** Bona fide purchaser's title will not be defeated by merely suspicious circumstances.

Where the plaintiff (a bank) purchased the note of a corporation, in due course, for value, before maturity, without actual notice of any infirmity or defect, the fact that the plaintiff's cashier, at the time he discounted the note, knew that the payee of the note was a manufacturer of stoves in one city, and that the maker was engaged in the wholesale drug business in another city, would not be sufficient to give plaintiff knowledge of any defect in the title to the note, or raise an implication of bad faith in purchasing it, as the title of the purchaser will not be defeated where he receives the note under merely suspicious circumstances. (*Post, pp.* 420-422.)

Acts cited and construed: Acts 1899, ch. 94, secs. 56 and 57.

Case cited and approved: Bank v. Butler, 113 Tenn., 574.

Bank v. Chapman.

**3. SAME.** A corporation's note for stock in another corporation is ultra vires and not collectible by the payee.

A note given by a corporation for the purchase of stock in another corporation is *ultra vires*, and against public policy, and is not collectible by the payee of the note. (*Post, pp.* 422-424.)

Cases cited and approved: Elevator Co. v. Railroad, 85 Tenn., 703; Mallory v. Oil Works, 86 Tenn., 598; Marble Co. v. Harvey, 92 Tenn., 119; Miller v. Insurance Co., 92 Tenn., 167, 168, 175; Cullen v. Coal Creek, etc., Co., 42 S. W., 693.

Cases cited and distinguished: McGrew v. Exchange, 85 Tenn., 572; Snoddy v. Bank, 88 Tenn., 576.

**4. SAME.** Corporation's negotiable note for an ultra vires purpose and against public policy is not void in the hands of an innocent purchaser before maturity.

Where a corporation is authorized to execute notes, a negotiable note executed and issued by it for an *ultra vires* purpose is not void in the hands of an innocent purchaser for value before its maturity, even though the purpose for which the note was executed was in violation of the public policy of the State. (*Post, pp.* 424-429.)

See cases cited and approved under the preceding headnote.

**5. SAME.** Bona fide purchaser of stolen negotiable instruments will be protected.

Where negotiable securities are stolen and sold by the thief to an innocent purchaser, the title of the innocent holder will be protected. (*Post, p.* 429.)

Case cited and approved: Memphis Bethel v. Bank, 101 Tenn., 134.

**6. SAME.** Bona fide purchaser and holder of a negotiable note may recover full amount.

The *bona fide* purchaser and holder of a negotiable note in due course may enforce payment of the full amount thereof, and is not limited to the amount paid for the note, with interest thereon, although the note may be without consideration and invalid as between the maker and payee. (*Post, p.* 431, 432.)

Bank v. Chapman.

Acts cited and construed: Acts 1899, ch. 94, sec. 57.

Case cited and distinguished: Oppenheimer v. Bank, 97 Tenn., 19;
Campbell v. Brown, 100 Tenn., 245.

FROM KNOX.

Appeal from the Chancery Court of Knox County.—
JOHN H. FRANTZ, Special Chancellor.

WEBB, MCCLUNG & BAKER, for complainant.

SHIELDS, CATES & MOUNTCASTLE, for defendant.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

Complainant brings this bill to recover the amount
of a note of $2500, executed by the defendant to the
Hagey Stove Company, and by the latter assigned to
the Jefferson Bank of St. Louis. It is alleged in the
original bill that the complainant bank purchased this
note from the Hagey Stove Company in due course of
trade, for value, and before its maturity, and complain-
ant claims that it is an innocent holder and owner of
said note. Chapman-White-Lyons Company in its an-
swer admits the execution of the note, but under oath
denies that said note is its act or deed, and also denies

that complainant is an innocent holder of said note. The averments upon which the defendant denies that it is liable on said note are that D. C. Chapman, its vice president and general manager, executed said note in the name of defendant firm in payment of stock for $5000, which the said Chapman purchased in the Tennessee Star Vending Match Company, a Tennessee corporation, engaged in manufacturing and renting a patented match-vending machine. The note for $2500 in suit was executed to the Hagey Stove Company in part payment for said stock. It is averred that said note was executed by defendant's vice president and general manager, without authority from defendant or its stockholders or board of directors; that said note was procured from Chapman by fraud; and that it is utterly without consideration. It is further averred that the act of Chapman in executing said note was wholly without authority from the defendant firm, and that the execution of said note was *ultra vires* and void as to this defendant. Wherefore defendant company denies any liability whatever on said note.

Proof was taken, and on the hearing the special chancellor, Hon. Jno. H. Frantz, pronounced a decree in favor of complainant for the full value of the note, with interest and attorney's fees, as stipulated on the face of the note. The defendant, Chapman-White-Lyons Company, appealed and has assigned errors as follows:

(1) The chancellor erred in finding and decreeing that complainant, Jefferson Bank of St. Louis, Mo.,

is an innocent purchaser of said note, and that the pleas of *non est factum* and *ultra vires* contained in the sworn answer of defendant, Chapman-White-Lyons Company, are unavailing against said note in the hands of the bank.

(4)   The chancellor erred in holding and decreeing that the complainant is entitled to recover from the defendant, Chapman-White-Lyons Company, the full face of said note, with ten per cent. attorney's fees, for the reason that, conceding complainant to be an innocent purchaser of the note, and that the defenses interposed thereto are unavailing, even an innocent purchaser of commercial paper can only recover the actual amount paid out by him, with interest, when it appears that the maker of the note has a valid defense as against the payee.

In examining this question the first inquiry that arises is in respect of the power of the defendant corporation to execute the note in question.

The provisions of the charter of the Chapman-White-Lyons Company, conferring on it power to issue negotiable paper, are as follows:

"(7)   To borrow money and issue notes or bonds upon the faith of the corporate property," etc.   It is also authorized "to deal in merchandise in as full and ample a manner as is now allowed by law to individuals."

Article 4 of section 1 of the by-laws authorizes the president to sign contracts for the company, and only

requires the attestation of the secretary to such documents as require the corporate seal, and then only when necessary.

Section 2 of article 4 provides that the vice president and general manager shall perform the duties of the president "in the absence or disability of the president."

Now, it will be observed that under its act of incorporation the defendant, Chapman-White-Lyons Company, is expressly authorized to issue notes or bonds, and in the present instance the note was executed by the vice president of the company, who, under its by-laws, is vested with the authority of the president, in the absence or disability of the president. The president was expressly authorized by the by-laws to sign the contracts of the company, and this duty could, of course, be performed by the vice president in the absence or disability of the president. The record discloses that the president of the company resided in another county and the actual management of the business was generally left to the vice president. We take it the vice president had the right, under the charter and by-laws, to execute the note in controversy; and, nothing appearing on the face of the note to impair its negotiability *prima facie,* it is binding in the hands of an innocent purchaser for value and without notice of any infirmity in the note.

It is said, however, on behalf of the defendant, Chapman-White-Lyons Company, that the note is without

consideration, since neither the company, nor any officer of the company, ever received any part of the stock in the Tennessee Star Vending Match Company, for which the note in question was executed. It appears, however, from the testimony of the cashier of the Jefferson Bank, who purchased this note from Robinson, the representative of the Hagey Stove Company, that he discounted the note in due course of trade, and had no notice of any of the facts attending the execution of the note, and no knowledge that the note was without consideration. He testifies that the proceeds of the note were placed to the credit of the Hagey Stove Company and checked out by that corporation.

It is provided by the negotiable instruments law of this State (Laws 1899, p. 150, c. 94), passed May 16, 1899, in section 57, as follows:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Section 56: "To constitute notice of an infirmity in an instrument or defect in title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no proof in this record tending to show that the Jefferson Bank had actual notice of any outstand-

ing equity against the note, or any knowledge of such facts as would imply bad faith in purchasing the note. The fact that the cashier of the bank, at the time he discounted the note, may have known that the Hagey Stove Company was engaged in the manufacture of stoves in St. Louis and that the Chapman-White-Lyons Company was a corporation engaged in the wholesale drug business in Knoxville, would not be sufficient, under our statute, to fix the bank with knowledge of any defect in the note, or raise an implication of bad faith in purchasing it. The title of the purchaser, it has been held, will not be defeated, where he receives the note under merely suspicious circumstances. *Unaka National Bank* v. *Butler,* 113 Tenn., 574, 83 S. W., 655.

It is said, however, on behalf of the appellant, that in Tennessee a commercial corporation is inhibited against purchasing or owning stock in another corporation, and that the purchase of such stock is *ultra vires* and against the public policy of the State. *Marble Co.* v. *Harvey,* 92 Tenn., 119, 20 S. W., 427, 18 L. R. A., 252, 36 Am. St. Rep., 71; *Cullen* v. *Coal Creek M. & F. Co.,* 42 S. W., 693; *Elevator Co.* v. *Railroad,* 85 Tenn., 703, 5 S. W., 52, 4 Am. St. Rep., 798; *Mallory* v. *Oil Works,* 86 Tenn., 598, 8 S. W., 396; *Miller* v. *Ins. Co.,* 92 Tenn., 175, 21 S. W., 39, 20 L. R. A., 765.

In *Marble Co.* v. *Harvey,* 92 Tenn., 119, 20 S. W., 428, 18 L. R. A., 252, 36 Am. St. Rep., 71, it is said as follows:

"The public policy of this State will not permit the

control of one corporation by another. . . The result is that this purchase of shares for the express object of controlling and managing another corporation was *ultra vires,* and therefore unlawful and void. Being void, it was of no legal effect, and no rights result from it, enforceable by or through the courts of the State, when such aid is invoked in furtherance of the unlawful agreement."

"Contracts of corporations, made in excess of their charter powers, are *ultra vires* and void. Such contracts are in contravention of public policy, and corporations are not estopped, although the contract has been executed in good faith by the other party, to make the defense of *ultra vires* to any suit brought to enforce such unauthorized contract." *Miller* v. *Insurance Co.,* 92 Tenn., 167, 168, 21 S. W., 39, 20 L. R. A., 765.

The insistence on behalf of appellant is that the note in controversy was executed for an unlawful purpose, namely, the purchase by one corporation of stock in another corporation, in contravention of the public policy of this State, and that the note is not merely voidable, but absolutely void. Counsel cite *Snoddy* v. *Bank,* 88 Tenn., 576, 13 S. W., 127, 7 L. R. A., 705, 17 Am. St. Rep., 918, wherein it appeared that J. H. Snoddy executed a note negotiable in form to Williams & Co. for a gambling contract. Williams & Co. transferred the note to the American National Bank in due course of trade and before maturity. The bank

purchased the note without any knowledge of the consideration that passed between the original parties. The bank, as an innocent purchaser for value, sought to collect the note by suit against Snoddy. It was held by this court that the note was void and noncollectible, because based on a gambling transaction. The court said:

"By the great weight of authority notes given in consideration of a contract against morals, public policy, and public statutes are void in any hands."

It will be observed, from an examination of that case, that the note was held void, because based on a gambling consideration, and was void by express statute. Acts 1883, p. 331, c. 251; *McGrew* v. *City Produce Exchange,* 85 Tenn., 572, 4 S. W., 38, 4 Am. St. Rep., 771.

We are clearly of opinion that under the authorities, as between the drawer and drawee of the note, it was *ultra vires* and noncollectible; but a different question is presented when the note is found in the hands of an innocent purchaser before maturity in due course of trade. If the Chapman-White-Lyons Company, a corporation, had been entirely destitute of any authority to execute negotiable paper under its charter, then such paper would be void, even in the hands of an innocent purchaser for value; but, where it appears that the charter of a corporation confers express power to make bills and notes in the course of its business, the fact that it transcended the power conferred in its char-

ter and executed a negotiable instrument for a matter beyond the scope of its business would not destroy the negotiability of the note and render it void in the hands of an innocent purchaser for value. The authorities announcing this rule have been collected by Mr. Thompson in his work on Corporations, and the rule is well formulated by the author in the following paragraphs of said work:

"The general rule established by the American cases is that private corporations, unless prohibited by charter or by statute, have the implied power to execute promissory notes or other evidences of indebtedness in payment or settlement of all debts incurred in the course of the execution of their corporate purposes, or in connection with any matter which they are authorized by their charter or by the governing statute to do, and which is not foreign to the purposes of their creation. This includes the power to execute promissory notes payable on demand or at a future date, to draw bills of exchange, to accept drafts, and to draw checks upon any funds deposited in bank." Thompson on Corporations (2d Ed.), sec. 2185.

"The power to execute negotiable instruments is based on the implied power inherent in every corporation of making and taking contracts to effectuate any of the purposes of its creation." Id., sec. 2186.

Again the author says:

"When a corporation possesses general powers to issue commercial paper, what is termed an *ultra vires*

negotiable instrument is good in the hands of a *bona fide* purchaser for value. But corporations possess no implied power to execute or indorse negotiable paper for purposes foreign to the objects of the corporation. This principle was illustrated in an early United States case, where it was held that a railroad company had no power to execute a promissory note for the purchase price of a steamboat."

Again the same author says, in section 2190:

"The distinction must be observed between total want of power in a corporation to issue negotiable instruments and irregularities in the exercise of the power in the execution of such instruments. Where there is an entire want of power on the part of the corporation to execute a negotiable instrument, there can be no recovery on the part of the holder, although he may be *bona fide* such, unless the corporation has estopped itself from maintaining such defense. . . On the othed hand, where a corporation possessing general power to issue negotiable instruments did issue its negotiable paper, unauthorized in the particular instance, but such want of authority did not appear on the face of the instrument, the court held that the corporation was liable to an innocent holder for value, speaking as follows: 'To state the legal proposition in its application to this case, this defendant, having power to incur debts to a limited extent, and to issue its negotiable notes therefor, the plaintiff, as a *bona fide* holder of the note in suit, may recover upon it, although in this par-

ticular case the indebtedness of the corporation at the time of giving this note already exceeded the limits prescribed by its articles of association.' This distinction between the want of power and its irregular exercise is recognized by the courts generally."

Again the same author says:

"Where corporations have the power to issue negotiable paper, such instrument will be presumed to have been given for the authorized purposes of the corporation, and in the ordinary course of business, until the contrary is made to appear; and the burden is upon the person who alleges the contrary to prove it. . . . So it has been held that this presumption does not prevail where it appears that the instrument was issued contrary to the purposes for which the corporation was created, and no circumstances are shown by the party affirming the validity of the act, sufficient to make the act valid. But the better rule, according to the American authorities, is that nothing but a total want of power will impeach such instrument in the hands of *bona fide* purchasers for value. Under this rule, if an instrument was made in the course of business, and for its benefit, the corporation will be bound, though the note may have been indorsed for a purpose apparently beyond the scope of its business."

In 2 Cook on Corporations, par. 761, note 4, citing *Genesee Savings Bank* v. *Michigan Barge Co.,* 52 Mich., 438-446, 17 N. W., 790, 18 N. W., 206 (1884), the rule is thus stated:

"Where a corporation has, under any circumstances, power to issue negotiable paper, the *bona fide* holder has the right to presume that it was issued under circumstances which gave the requisite authority; and the negotiable paper of a corporation, which appears on its face to have been duly issued by such corporation, and in conformity with the provisions of its charter, is valid in the hands of a *bona fide* holder."

In Field on Corporations, sec. 270, it is said:

"If the corporation has authority to issue these instruments for any purpose, although in respect to the particular issues it may have been in excess of authority, the purchaser would be protected, if he made the purchase in good faith, for a valuable consideration, and without notice, actual or constructive, of the particular infirmity or excess of authority on the part of the corporation or its agents."

Id.: "If there is nothing on the face of the negotiable instruments executed by a corporation to indicate that they are *ultra vires,* and it had power to issue such instruments (notes) in the conduct of its legitimate business, a defense on that ground could not be set up to defeat a recovery thereon by a *bona fide* holder for value without notice of the excess of authority in issuing them for the particular purpose for which they were issued."

In Tiedeman on Bills and Notes, par. 43, it is said:

"Indeed, it is the general rule that while, between the original parties to the paper, a corporation can

defend in a suit on its bills, notes, and checks by pleading that its issue was *ultra vires,* this defense will not prevail against a *bona fide* holder; the common rule of negotiable paper applying, that the indorsee takes the paper free from the equitable defenses that taint the character of the paper, while it is still in the hands of the original payee."

It is said, however, by counsel for appellants, that the note in suit, having been executed in violation of the public policy of this State, is absolutely void, even in the hands of an innocent purchaser; but we are of opinion that the authorities cited establish the proposition that, where the corporation is clothed with authority to issue negotiable instruments, an irregular exercise of the power, or the issuance of the paper for an object foreign to the business of the corporation and against the public policy of the State, does not affect the validity and collectibility of the note in the hands of an innocent purchaser.

It is well settled that, where negotiable securities are stolen and sold by the thief to an innocent purchaser, the title of the innocent holder will be protected. *Memphis Bethel* v. *Bank,* 101 Tenn., 134, 45 S. W., 1072.

Counsel also invokes the doctrine applicable to infants and insane persons, namely, that notes executed by them are absolutely void, even in the hands of an innocent purchaser.

The case of *Roach* v. *Woodall*, 91 Tenn., 213, 18 S.
W., 407, 30 Am. St. Rep., 883, is cited for the proposition that a note executed by a minor is absolutely
void, even in the hands of an innocent purchaser; but
it must be remembered that an infant has no power to
execute a promissory note under any circumstances,
even for necessaries, while in the present case the defendant corporation is expressly authorized by its charter to issue notes or bonds.

Counsel also cite the following from Daniel on Negotiable Paper (3d Ed.), vol. 1, p. 352, sec. 377, as
follows:

"It is obvious that inquiry as to the power of the
corporation to execute the instrument is of the first
importance; for, if it exceed its powers, its act is as
much a nullity as the act of a married woman or a
lunatic, and, however ignorant and innocent the party
dealing with it may have been, he cannot enforce his
contract made with it.

"It is considered as an act *'ultra vires'*—that is, 'beyond the powers'—of the corporation, and therefore
without legal sanction or vitality. And, being a mere
nullity, circulation from hand to hand, and ownership
by a *bona fide* holder, can impart no vitality to it; and
as against the corporation he can stand on no better
footing than his predecessors. Nor is this rule so harsh
as it might seem. Ignorance of the law excuses no one,
and, a corporation being a legal creation, all persons
dealing with it are chargeable with notice of its legal
character."

But the same observations are pertinent to this statement of the law, namely, married women are not authorized to issue negotiable paper under any circumstances, unless expressly provided by the statute; whereas, as already stated, the defendant corporation is clothed with such general power.

It is said, however, by counsel for appellant, that in no event is the complainant entitled to recover exceeding the amount it paid for said note, with interest. It appears that the decree below was for the full amount of the note, with interest and attorney's fees amounting to $251.75. Counsel, in support of his position, invokes the principle announced in *Oppenheimer* v. *Bank,* 97 Tenn., 19, 36 S. W., 705, 33 L. R. A., 767, 56 Am. St. Rep., 778, wherein it was said:

"We hold, however, that, these notes being fraudulent in their inception and without consideration between the original parties, the bank will only be entitled to recover to the extent of the sum actually paid by it, to wit, the sum of $1200 and interest. In other words, we hold there was a negotiation of the notes in due course of trade only to the extent of the amount actually paid."

Again, in *Campbell* v. *Brown,* 100 Tenn., 245, 48 S. W., 970, it is said:

"The purchaser of a note at a rate of discount equivalent to forty per cent per annum cannot, though innocent of any wrong, recover more than the amount actually paid against the maker in fraud of whose rights the note was transferred."

Bank v. Chapman.

It should have been stated that the amount paid for the note by the complainant was the sum of $2448.-75, so that the amount of discount retained by the bank was $51.25. But we are of opinion that this question is now settled by section 57 of the negotiable instruments law, which provides that the innocent holder "may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

The decree of the chancellor will therefore be affirmed.