Murray v. Thompson.

W. H. MURRAY *v.* JOHN THOMPSON *et al.*

(*Knoxville.* September Term, 1916.)

1. **INFANTS. Indorsement of note. Effect. Negotiable instruments act.**

Negotiable Instruments Law (Laws 1889, chapter 94) section 22, providing that the indorsement or assignment of the instrument by an infant passes the property therein, does no more than to make the contract of indorsement not void, and the incapacity of the minor unavailing to prior parties, and does not take away the infant's right to disaffirm. (*Post, pp.* 119-122.)

Acts cited and construed: Acts 1899, ch. 94.

Case cited and distinguished: Roach v. Woodall, 91 Tenn., 206.

2. **INFANTS. Contracts. Disaffirmance.**

Contract of indorsement of a note by an infant may be dis-affirmed against one taking it from a bearer without inquiry, with constructive notice of the disability. (*Post, pp.* 122, 123.)

Cases cited and approved: Hosler v. Beard, 54 Ohio St., 398; McClain v. Davis, 77 Ind., 419; Case v. Espenschied, 169 Mo., 215.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—W. B. GARVIN, Chancellor.

TATUM, THACH & LYNCH, for appellant.

CANTRELL & MOON, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is a suit by complainant, a minor, to disaffirm a contract of indorsement of a note of which he was payee, and to recover the note from Thompson, indorsee.

Complainant while in the employ of a brick company received personal injuries, and the company executed to him a note of $1,750 in satisfaction of his claim to damages. The note was made payable June 1, 1915, which was the date on which complainant would arrive of age. On October 16, 1914, W. A. Murray, the father of complainant, with the knowledge and authority of the latter, sold the note to Thompson, indorsing the name of the son without apprising Thompson of the fact that he himself was not the payee. The proceeds of the note were deposited to complainant's account in bank, and later were invested in a soloon business in the name of the father and son, and in a short time lost. There was no actual fraud on the part of complainant in the transaction with Thompson.

The chancellor decreed that complainant was entitled to disaffirm and recover; but the court of civil appeals reversed the ruling.

The last-named court was of opinion that complainant would have been entitled to the relief awarded by the chancellor under the rules of law in force before the passage of the Negotiable Instruments Law

(Acts 1899, chapter 94); but that said act, by its section 22, so changed the law as to deny complainant the remedy sought. The section thus relied on is as follows:

"The indorsement or assignment of the instrument by a corporation, or by an infant, passes the property therein, notwithstanding that from want of capacity the corporation or infant may incur no liability thereon."

The question to be ruled seems never to have been passed on by any court of last resort. In its solution light may be afforded by a reference to the history and object of the Negotiable Instruments Law. It was drafted for the purpose of codifying the principal rules of the law merchant as announced in numerous decisions which were deemed to embody the best doctrine. It was not the purpose to change such of those rules as had been uniformly accepted, but rather to make the law certain and uniform by the adoption of that one of two or more rules (arising out of discordant decisions in different jurisdictions) which was thought to be the best pronouncement of commercial law.

One of the questions on which judicial decisions were in conflict was, whether an infant's indorsement of a negotiable instrument was void or only voidable. This is demonstrated by what was said in *Roach* v. *Woodall,* 91 Tenn., 206, 212, 18 S. W., 407, 408 (30 Am. St. Rep. 883):

"Mr. Story, in his work on Promissory Notes, sections 77-80, puts upon the same ground the minor's incapacity to indorse and make a promissory note, and shows that there is a conflict of opinion as to whether such act is void or voidable. . . .

"Mr. Story thought the weight of authority preponderated in favor of holding promissory notes given or indorsed by an infant voidable only. Section 78."

The lack of uniformity in the authorities on that point is also commented on and demonstrated in 3 R. C. L. p. 1086, section 292.

It was to make certain and uniform the law on this point that section 22 was embodied in the Negotiable Instruments Act. In stipulating that the indorsement of the instrument by an infant "passes property therein," it was meant to provide that the contract of indorsement is not void, and that his indorsee has the right to enforce payment from all parties prior to the infant indorser. The incapacity of the minor cannot be availed of by prior parties.

It was not intended to provide that the indorsee should become the owner of the instrument by title indefeasible as against the infant, or to make the act of indorsement an irrevocable one.

The act does not concern the right of such an indorser to disaffirm under the rules of the law of infancy. The words "passes the property therein," if given a meaning that would deny that right in respect of a contract of indorsement, would de-

prive the infant of the right to reinvest in himself the title to the instrument against a holder who had knowledge of the indorser's infancy. The quoted words are not qualified so as to save his rights in such assumed case. It must be admitted that the legislature did not intend any such radical and grossly inequitable departure from a settled and salutary rule of law.

The Negotiable Instruments Law, in, this section, is not to be treated as going further than did the corresponding section of the English Bills of Exchange Act, section 22, which provides:

"When a bill is drawn or indorsed by an infant, minor or corporation having no capacity or power to incur liability on a bill, the drawing or indorsement entitles the holder to receive payment of the bill, and to enforce it against any other party thereto."

The English act was before the National Conference of State Boards of Commissioners, when the American act was drafted, and that there is such correspondence in meaning is the view expressed by Judge Brewster, president of the conference. The American act went no further. 10 Yale Law Journal, 84; Brannan, Neg. Ins. Law (2d Ed.), 185, 224; Norton on Bills and Notes (4th Ed.), 90, 285.

The act having no effect on the right of an infant to disaffirm, the precedents in relation to that right govern. This court in *Roach* v. *Woodall,* supra, held that the minor might disaffirm and avoid the act of indorsement, and an opinion was intimated

(the facts did not call for a decision) that one who became holder of the note was chargeable with knowledge of the indorser's incapacity. The court used language that has pertinency to the facts of the pending case:

"A transferee who receives by delivery merely from bearer a note with the name of another indorsed upon it, ought to be charged with notice who that indorser was, and whether a person who could in law bind himself by an indorsement. If he does not in fact know the indorser, he would hardly predicate anything of an indorsement, or rely on it without inquiry. Such inquiry would disclose the minority of the indorser, and, consequently, it might well be holden that the transferee was chargeable with notice of the invalidity of the indorsement."

The common-law rule is that the purchaser and indorsee of such a note is not a *bona fide* holder as against an infant indorser, and that the latter may disaffirm and recover the note from the possession of the former, who takes with constructive notice of the incapacity. *Hosler* v. *Beard,* 54 Ohio St., 398, 43 N. E., 1040, 35 L. R. A., 161, 56 Am. St. Rep., 720; *McClain* v. *Davis,* 77 Ind., 419; *Case* v. *Espenschied,* 169 Mo., 215, 69 S. W., 276, 92 Am. St. Rep., 633; 3 R. C. L. p. 1028, section 235; Id. p. 1086, section 292; 1 Daniel, Neg. Ins. (6th Ed.), 806a; 1 Parsons, Notes and Bills, 276.

The chancellor made a proper disposition of the case in his decree. The decree of the court of civil appeals is therefore reversed, and that of the chancellor affirmed.