## GEORGE W. HIGHT *v.* R. L. McCULLOCH.*

### (*Nashville.* December Term, 1923.)

1. **FRAUDS, STATUTE OF**, Parol lease for one year good under statute, though not expiring till more than year after date of parol contract.

   A parol lease for one year was good under statute of frauds, though it did not expire for more than one year after the date of the parol contract to lease. (*Post, p.* 122.)

   Case cited and approved: Hayes v. Arrington, 108 Tenn., 494.

2. **BILLS AND NOTES.** Doctrine of constructive notice of equities abolished.

   The doctrine of constructive notice of equities was abolished by the Negotiable Instrument Act. (*Post, p.* 122.)

   Case cited and approved: Corinth Bank & Trust Co. v. Security Nat. Bank, 148 Tenn., 136.

3. **BILLS AND NOTES.** Rent notes, void if property was destroyed, nonnegotiable.

   Where notes given for rent for the ensuing year contained the provision that they were void in case the property was destroyed before maturity, they were nonnegotiable as failing to contain an unconditional promise to pay, required by Negotiable Instrument Act (Shannon's Ann. Code, section 3516a9, subsec. 2). (*Post, p.* 122-124.)

---

*On lessor's covenant to repair as one running with the land, see note in L. R. A. 1915C, 220, 247.

On reference to account or fund as affecting negotiability of note, see notes in 35 L. R. A., 649; 8 L. R. A. (N. S.), 231.

On reference to extrinsic agreement as affecting negotiability of note, see note in 14 A. L. R., 1126. See also notes in 30 L. R. A. (N. S.), 40. L. R. A., 1918B, 639.

On validity of parol lease for a year to commence *in futuro*, see note in 49 L. R. A. (N. S.), 820.

Cases cited and approved: Strand Amusement Co. v. Fox, 205 Ala., 183; First Nat. Bank of Hutchinson v. Lightner, 74 Kan., 736; Liberty State Bank v. Metropolitan Church Assn., 191 N. W., 415;

Case cited and distinguished: Jennings v. First Nat. Bank, 13 Colo., 417.

Code cited and construed: Sec. 3516a9, subsec. 2(S).

4. **LANDLORD AND TENANT.** Covenant to repair buildings on leased land runs with land.

A covenant to repair buildings on leased land at the time of the lease runs with the land. (*Post, pp.* 124-126.)

Cases cited and approved: Bream v. Dickerson, 21 Tenn., 126; Brooks v. Smith, 1 Shan. Cas., 158.

5. **BILLS AND NOTES.** Purchaser of nonnegotiable rent notes takes subject to equities.

Purchaser of nonnegotiable rent notes took them as an assignee, subject to existing equities between maker and payee. (*Post, pp.* 126-128.)

Cases cited and approved: Klots Throwing Co. v. Manufacturers' Commercial Co., 179 Fed., 813; Cushing v. Field, 70 Me., 50; Continental Bank & Trust Co. v. Times Pub. Co., 142 La., 209.

6. **BILLS AND NOTES.** Set-off arising after transfer not available against transferee.

Where, after nonnegotiable rent notes were given for lease, obligating landlord to repair defective roof, landlord without repairing the roof transferred the rent notes to a purchaser of the premises, who refused to repair, and thereafter a heavy rain came through the roof and damaged tenant's effects, *held*, in purchaser's suit against tenant on the rent notes, that such damage was not a proper set-off under Shannon's Code, section 4639; it not being a right of action existing against the payee at time of assignment, but one arising later. (*Post, pp.* 128-132.)

Cases cited and approved: Johnson v. Acme Harvesting Machine Co., 103 Pac., 638; Galliher v. Galliher, 78 Tenn., 23.

Cases cited and distinguished: Gatewood v. Denton, 40 Tenn., 381; Litterer v. Berry, 72 Tenn., 193; Lumber Co. v. Lumber Co., 128 Tenn., 11.

Hight v. McCulloch.

Code cited and construed: Sec. 4639 (S.).

7. **BILLS AND NOTES.** Rent notes held subject to defense of reduction of rental value from failure to make improvements.

In so far as the rental value of premises was reduced by failure to make improvements, including completion of a roof, there was *pro tanto* a failure of consideration for rent notes, and the notes were subject to that defense in assignee's suit thereon. (*Post, p.* 132.) 150 Tenn.—9.

### FROM RUTHERFORD.

*Headnote 1. 27 C. J., Frauds, Statutes of, § 179; 2. 8 C. J., Bills and Notes, § 710; 3. 8 C. J., Bills and Notes, § 212; 4. 35 C. J., Landlord and Tenant, § 488; 5. 8 C. J., Bills and Notes, § 577; 6. 8 C. J., Bills and Notes, § 1064; 7. 8 C. J., Bills and Notes, § 577; Sassen v. Haegle, 52 L. R. A. (N. S.), 1176; Shelby v. Hearne, 14 Tenn., 511.

Appeal from the Circuit Court of Rutherford County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOHN E. RICHARDSON, Judge.

GEORGE W. HIGHT, *in pro. per.*

HOLLOWAY & COFFEY, for defendant.

MR. MALONE, Special Justice, delivered the opinion of the Court.

McCulloch sued Hight before a justice of the peace of Rutherford county, Tenn., on eight rent notes for $22.50 each, and had judgment.

Hight appealed to the circuit court of Rutherford county, where the case was tried by the circuit judge without a jury, and the judgment of the magistrate affirmed.

From that judgment Hight appealed to the court of

civil appeals, where the judgment of the circuit court was affirmed. To reverse the action of the lower courts, Hight has filed his petition for *certiorari*.

On the trial of the case in the circuit court the plaintiff introduced the notes and rested, and Hight and his wife testified on behalf of defendant. The trial judge gave judgment, on the theory that plaintiff was an innocent purchaser for value of the rent notes.

The court of civil appeals thought this view erroneous, but affirmed the judgment, on grounds hereafter to be stated.

The facts, as developed in the testimony of Hight and wife, are as follows:

Defendant, Hight, rented the house in question from O. M. Davis, Jr., month after month, until October 1, 1921, at a monthly rental of $20.

In September, 1921, an oral lease was made between Hight and Davis for the full term of one year, beginning October 1, 1921. By the terms of this lease Davis was "to do certain improvements, viz. to construct fences and gateways and approaches and to cover the house, in consideration of an increase of rental from $20 per month to $22.50 per month."

It appears that the roof had been leaking "for a long while prior to September 23, 1921," and that Davis had attempted to stop the leaks, "and even at the time of the execution of the notes in September, 1921, was engaged in putting on a new roof, half of which was already completed."

Hight executed his twelve notes for $22.50 each, pursuant to the terms of this lease, and thereafter Davis told him (Hight) that he (Davis) was about to sell the prop-

erty, and asked if Hight would cancel the lease in case the purchaser wanted possession.

Hight replied that he would not stand in the way of a trade, if Davis could not sell the house with the lease on it, provided immediate notice should be given him.

The next day, or perhaps two days thereafter, Davis came to Hight and said that the purchaser did not want possession, and that he (Davis) had turned over to the purchaser, McCulloch, the rent notes for the ensuing year.

Hight thereupon went to the plaintiff, McCulloch, and asked him when he would complete the fences, gates, and approaches, according to the terms of the oral lease contract. McCulloch informed Hight that he would not do any of these things; that he knew nothing about the contract between Hight and Davis when he traded for the notes, and would not be bound by it. He further told Hight that if he (Hight) wished to move he might do so, and the notes would be surrendered to him.

Thereafter defendant, Hight, attempted to secure other premises, but, since it was past the renting season, was unsuccessful, and shortly thereafter his son was injured and it would have been impossible to leave the premises until after Christmas, 1921.

At the time defendant, Hight demanded of McCulloch the performance of Davis' contract, he notified McCulloch that the roof was leaking, "and that only half of a new roof was on, and that the other half was giving trouble;" that in case of a heavy rain damage would probably be caused.

McCulloch refused to repair the roof, declining to be bound by Davis' contract, and thereafter (the exact date not being shown), when all the inmates of the house

were asleep, there was a heavy rain, and water came through the roof and did considerable damage to furniture and household effects. The amount of this damage was estimated to be not less than $500.

Hight further testified that McCulloch bought the property some time prior to October 1st, and after the making of the parol lease with Davis, and after the execution of the notes, and that the property without the improvements was not worth $15 per month.

I. We agree with the court of civil appeals that the plaintiff, McCulloch, was not an innocent purchaser for value of the notes in question.

1. The parol lease for one year was good under the statute of frauds, although it did not expire, according to its terms, for more than one year after the date of the parol contract to lease. *Hayes* v. *Arrington*, 108 Tenn., 494, 68 S. W., 44.

We need not decide whether, conceding the note to be negotiable, mere knowledge of an existing lease, at the time of the purchase, would make the holder subject to equities between the parties. It may be observed however, in passing, that the doctrine of constructive notice, which so long obtained in this State, has been abolished by the Negotiable Instrument Act. *Corinth Bank & Trust Co.* v. *Security National Bank* (June, 1923), 148 Tenn., 136, 252 S. W., 1001.

2. A more serious point arises under provisions appearing on the face of the notes.

(a) Each of the notes sued on showed on its face that it was given for "rent of house No. ——— St.," for a certain month, "as per contract of even date herewith."

There is a decided conflict of authority as to whether the use of the words "as per contract" in the face of a

promissory note makes it nonnegotiable. *Strand Amusement Co.* v. *Fox* (1921), 205 Ala., 183, 87 So., 332, 14 A. L. R., 1121, and case note.

(b) But each of the notes in suit contains the further provision:

"This note void in case the property is destroyed before maturity."

We do not think it can be said that such an instrument evidences the unconditional promise to pay required by the Uniform Negotiable Instrument Act (Shannon's Annotated Code, section 3516a9, subsec. 2.)

We have found no case in which the note contained this exact language, but the case of *Jennings* v. *First National Bank* (1889), 13 Colo., 417, 22 Pac., 777, 16 Am. St. Rep., 210, is analogous.

There the note in question read as follows:
"$200.00

Colorado Springs, Colo., May 21, 1885.

"On October 1st after date I promise to pay to the order of Obediah P. Hopkins, $200, at the El Paso County Bank, Colorado Springs, Colorado, for value received. Negotiable and payable without defalcation or discount, with interest from June 1, 1885, at the rate of ten per cent. per annum until paid. This note is given for part payment of rent of certain pasture fields, and is not to be paid unless I have the use of said premises, in accordance with a certain lease and agreement executed by said Hopkins and myself, of even date herewith."

This instrument was held to be nonnegotiable—the court citing Daniel on Negotiable Instruments, section 41, and other authorities.

The Negotiable Instrument Act, it may be observed, is merely declaratory of the law merchant on this point. *First National Bank of Hutchinson* v. *Lightner* (1906), 74 Kan., 736, 88 Pac., 59, 8 L. R. A. (N. S.), 231, 118 Am. St. Rep., 353, 11 Ann. Cas., 596; *Liberty State Bank* v. *Metropolitan Church Association* (Minn), 191 N. W., 415.

II.   What then are the rights of the parties?

1. The trial judge, in his memorandum, expressed the opinion that McCulloch did not become landlord to Hight, and could owe him nothing by way of set-of.

The court of civil appeals held that occupation by the tenant, Hight, was notice to McCulloch, and that he was bound to inquire by what right and under what agreement the tenant held it; that he purchased subject to the tenant's rights, and was bound by all the terms of the tenancy—citing note 13 L. R. A. (N. S.), 96-98; *Sassen* v. *Haegle* (Minn.), 52 L. R. A. (N. S.), 1176, 1179; 16 R. C. L., 538, 539.

That court was further of the opinion that the transferee of the reversion was only liable to the lessee on such covenants of the lease as would run with the land, and not upon those to be deemed purely personal to the original lessor.   *Shelby* v. *Hearne*, 6 Yerg., 511, 513.

A covenant to repair buildings, standing on the leased land at the time of the lease, is a covenant which runs with the land.   *Bream* v. *Dickerson*, 2 Humph., 126, 128; *Brooks* v. *Smith* (1860), 1 Shan. Cas., 158.

The distinction was made in the case last cited between a covenant to build a shop on the leased premises which did not run with the land, and covenant to make repairs on an existing structure which would run with the land.

Hight v. McCulloch.

With regard to covenants to repair, a further distinction seems to be made in the authorities, viz. that, if there was a breach of the covenant to repair, before the transfer, the transferee of the reversion would not be liable unless the breach in its nature constitutes a continuing one. 16 R. C. L., p. 1055; note L. R. A., 1915C, p. 247, and cases reviewed.

Applying these principles to the case, the court of civil appeals was of opinion:

(a) That the contract to "construct fences and gateways and approaches" was a covenant to erect structures which would not run with the land.

(b) That the agreement to "cover the house" was an agreement to make repairs upon an existing structure, and would run with the land.

(c) That this was not a continuing agreement.

(d) That the evidence failed to show whether it was broken before or after the transfer of the house to McCulloch.

(e) That the burden to show that it was broken after the transfer to McCulloch was on the defendant, Hight.

(f) That therefore Hight could not set-off or recover the damages flowing from the breach of this covenant.

The result was to affirm the judgment of the trial court for the full value of the notes.

2. Without undertaking to express an opinion as to the foregoing conclusions, we think the court of civil appeals failed to consider the nature of the present litigation. It was a suit upon instruments alleged to be negotiable promissory notes, acquired before maturity, for a valuable consideration.

As heretofore stated, the plaintiff merely introduced the notes, apparently assuming that this was sufficient in the absence of one of the absolute defenses provided by the terms of the Negotiable Instrument Act.

But, since the notes were nonnegotiable, it follows, of course, that McCulloch was not a *bona-fide* purchaser for value, but a mere assignee, who took the notes subject to all equities existing between Hight and Davis, the payee. *Klots Throwing Co.* v. *Manufacturers' Commercial Co.* (C. C. A. 2, 1910), 179 Fed. 813, 103 C. C. A., 305, 30 L. R. A. (N. S.), 41; *Cushing* v. *Field* (1879), 70 Me., 50, 35 Am. Rep., 293; *Continental Bank & Trust Co.* v. *Times Pub. Co.* (1917), 142 La., 209, 76 South., 612, L. R. A., 1918B, 632.

In *Klots Throwing Co.* v. *Manufacturers' Commercial Co.*, supra, the note sued on was in the usual form, except that it contained this stipulation: "Value received, subject to terms of contract between maker and payee of Oct. 25, 1905."

The court of appeals held that this provision—"would not constitute a condition precedent. It would not be necessary to plead performance of the contract in a suit upon the note. And yet it could hardly be claimed that an assignment of the note would shut out the defenses which the parties had stipulated should exist in the case of an assignment. Any such claim, if sustained, would deprive the parties of their right to make lawful contracts. The obligation to pay in such a case as this would be qualified and conditional, but would not depend upon the fulfillment of any condition precedent."

It was further said: "In our opinion, the special stipulation in the present note limits and qualifies the ob-

ligation to pay so that it is not absolute, but is a *prima-facie* obligation subject to be defeated by the maker's defenses.''

In *Cushing* v. *Field,* supra, the note was absolute in its form, but ''across the extreme edge'' contained the following indorsement:

''This note is subject to a contract made November 13, 1874.''

It was held that the note was not negotiable, and that the assignee ''takes it subject to all the equities between the original parties.''

In the case of *Continental Bank & Trust Co.* v. *Times Pub. Co.,* supra, the note showed on its face that it was given in payment of rent for a certain month for a part of a certain building in Shreveport, La., ''as per contract dated March 24, 1913.'' The building having burned, the maker of the notes pleaded failure of consideration. It was held that the notes were not negotiable, and that they were subject to this defense in the hands of the assignee.

We are therefore of opinion that McCulloch took these notes merely as assignee, and subject to all existing equities which would have been available to Hight as against Davis, the original payee.

We need not decide whether the mere presence of the words, ''as per contract of even date herewith,'' would be sufficient in and of themselves to render the paper nonnegotiable. But certainly the provision as to the note becoming void in case the property should be destroyed, etc., renders the note nonnegotiable, even though it does not constitute a condition precedent. *Klots Throwing*

*Co.* v. *Manufacturers' Commercial Co.* (C. C. A. 2, 1910), 179 Fed., 813, 103 C. C. A., 305, 30 L. R. A. (N. S.), 41.

3. To what extent may the defendant, Hight, rely upon his plea of set-off, as against the plaintiff, McCulloch?

It is Hight's theory that he should be allowed to set off the damage accruing by reason of the leaking roof, and, since this amounts to more than the plaintiff's demand, he insists that the plaintiff's suit should be dismissed.

By Shannon's Code, section 4639, it is provided:

"4639 (2918) 3628. *Defendant may Set Off.*—The defendant may plead by way of set-off or cross-action:

"(1) *Mutual Demands.*—Mutual demands held by the defendant against the plaintiff at the time of action brought, and matured when offered in set-off. (1756, chapter 4, sec. 7.)

"(2) *Matter Growing out of Plaintiff's Demand.*—Any matter arising out of the plaintiff's demand, and for which the defendant would be entitled to recover in a cross-action. (1855-56, chapter 71, sec. 1.)

"(3) *Or the Original Consideration.*—Any matter growing out of the original consideration of any written instrument, for which the defendant would be entitled to recover in a cross-action. (Id. sec. 2.)

"(4) *Equities Attached to the Demand.*—Any equities between the defendant and the original party under whom the plaintiff claims, which by law have attached to the demand in the plaintiff's hands, and for which the defendant would be entitled to a recovery against such original party. (Id. sec. 3.)"

In *Gatewood* v. *Denton* (1859), 3 Head, 381, a past-due note was assigned, and at the time of the assignment the

maker of the note had a demand against the assignor, growing out of a surety debt which the maker of the note had paid for the assignor.

The assignee brought suit on the note. The defendant relied on set-off as a defense, but the circuit judge held such defense inadmissible as against the assignee of the note.

On appeal, this court reversed the case, saying, at page 382:

"The law on this subject was materially modified, and the remedy enlarged, by the act of 1855-56, chapter —, the provisions of which have been incorporated in the Code. By section 2918—4, it is provided that 'any equities between the defendant and the original party under whom the plaintiff claims, which by law have attached to the demand in the plaintiff's hands, and for which the defendant would be entitled to a recovery against the original party,' may be pleaded, by the defendant, by way of set-off or cross-action.

"This provision, it seems to us, embraces the present case. At the time of the assignment of the note to the plaintiff, the defendant had a well-founded right of action against the assignor, for an amount larger than the sum due upon the note, for money paid as his security, which he might have recovered by action of debt, or assumpsit, or by motion. The right thus existing had, in the language of the section just quoted, attached itself to the note before its transfer to the plaintiff; or, in other words, the right of set-off, or cross-action, was fixed and complete, in the defendant, previous to and at the time of the assignment of the note, and could not have been re-

150 Tenn.—9.

Hight v. McCulloch.

all that is requisite to entitle the defendant to a set-off against the plaintiff, who, by taking the note after it was due, holds it subject to every equitable defense that might be set up against the payee.

"It is not necessary that there should have been any special agreement or understanding between the defendant and the payee, that the debt due from the latter to the former should be applied in discharge of the note, in order that the right of set-off should attach to the note; nothing more is essential than that the right to the set-off should, by law, be perfect, as against the original party, at the time of the transfer."

This case was approved in *Litterer* v. *Berry* (1879), 4 Lea, 193, 195, 196.

It will be noted that in both these cases the right of action existed against the assignor at the time of the assignment, and the decision in these cases is not broad enough to cover a case like the present, where the cause of action for damages sustained by reason of the leaking roof arose after the assignment.

This seems to be in line with the rule as laid down by the authorities elsewhere.

Thus, in 24 R. C. L., 841, it is said that—"Claims accruing after the assignment or notice thereof, where notice is required, cannot be set off, although they arise out of transactions previously entered into, unless they are connected, or the parties intended that they should be set off."

In 2 R. C. L., 629, it is said: "The assignee of a nonnegotiable chose in action normally takes it subject to all equities and defenses which could have been set up against it in the hands of the assignor at the time of the

assignment, and in those cases in which notice of an assignment must be given to protect the assignee, subject also to equities which may arise after the assignment but before due notice has been given to the debtor."

In 8 Corpus Juris, 805, it is said: "Except for a few decisions, largely controlled by statutes, that a maker may set off a claim against the holder, if he acquired it against the payee or the transferor before notice of the transfer, at least if nonnegotiable, a set-off or counterclaim against the payee cannot be set up against an assignee, according to the weight of authority, even in a case where otherwise proper, if acquired or accruing after the transfer of the paper; and under some statutes the payee must also have had notice of the acquisition of such claim before he made the transfer, in order to make it a defense to the maker as against an indorsee. Set-offs subsequently acquired, even though arising out of a previous transaction, cannot be set up; but this rule does not apply to equities not constituting set-offs which grow out of the original transaction or subject-matter of the contract between the parties to the note and are not discovered until after the transfer."

See, also, *Johnson* v. *Acme Harvesting Machine Co.* (1909), 103 Pac., 638 (a case of a nonnegotiable note).

It has, indeed, been said that a "set-off" is not an "equity." Thus Mr. Daniel, in his work on Negotiable Instruments (4th Ed.) vol. 2, section 1435a, observes:

'The rule that a party taking an overdue bill or note takes it subject to the equities to which the transferor is subject, does not extend so far as to admit set-offs which might be available against the transferor. A set-off is not an equity; and the general rule stated is qualified and

restricted to those equities arising out of the bill or note transaction itself, and the transferee is not subject to a set-off which would be good against the transferor, arising out of collateral matters."

But the rule is otherwise, under our statute above quoted. *Galliher* v. *Galliher* (1882), 10 Lea, 23, 28.

The distinction which we have made seems to have been in the mind of Mr. Justice WILLIAMS, in delivering the court's opinion in *Lumber Co.* v. *Lumber Co.* (1913), 128 Tenn., 11, 17, 156 S. W., 465, 467, 46 L. R. A. (N. S.), 62, Ann. Cas., 1914D, 744, where it was said:

"We have not here an effort to set off a demand purchased or acquired after the assignment, but the enforcement of a right that antedated the assignment."

We are therefore of opinion that the damages arising from the leaking roof could not be set off against the plaintiff's demand.

But, in so far as the rental value of the premises may have been reduced by the failure to make improvements (including the completion of the roof), there was *pro tanto* a failure of consideration, and the notes are properly subject to this defense.

As the proof does not clearly disclose the difference in value, the judgment will be reversed, and the case remanded for a new trial, on the principles stated in this opinion.