Elizabeth SOLOFF, Plaintiff,

v.

James Steele DOLLAHITE, Jr., et al., Defendants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 21, 1989.

George E. Copple, Jr., Nashville, for appellee Elizabeth Soloff.

L.H. Armistead, III, Kimberly K. Whaley, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for appellees Gene Hosse and Tom Lynch.

Charles W. Burson, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., Pamela Bingham Broussard, Asst. Atty. Gen., Nashville, for appellee Tennessee Dept. of Revenue.

Richard L. Winchester, Jr., The Winchester Law Firm, Memphis, for appellant Community Bank of Germantown.

OPINION

CANTRELL, Judge.

The trial court held that the Community Bank of Germantown was not a holder in due course of two notes payable to Paneling and Home Center, Inc. and negotiated to the bank by James S. Dollahite, Sr. Thus, the court held that the bank's interest in the notes was subject to the prior claims of the State of Tennessee for unpaid taxes and of Elizabeth Soloff, a creditor of Paneling and Home Center, Inc.

Prior to 1984, James Steel Dollahite, Jr. operated an incorporated business in Nashville under the name of Paneling Centers of America (PCA). Mr. Dollahite and his father, James Steel Dollahite, Sr., were the officers, principal shareholders, and major creditors of the corporation. In mid–1984, the business became indebted to the state for back taxes. The state filed a notice of lien in Davidson County in September of 1984 and revoked the charter of PCA on December 9, 1984.

In March of 1985, the Dollahites became officers, principal shareholders, and managers of Paneling and Home Centers, Inc. (PHC), a company located on the same premises and transacting the same business. On May 29, 1986, Alfred E. Hosse and Thomas Lynch purchased the assets of PHC. As part of the contract of purchase, Hosse and Lynch executed two notes payable to PHC, one for $25,000.00 payable on December 1, 1986 and one for $25,000.00 payable on June 1, 1987. On June 13, 1986, the state filed a notice of tax lien against the assets of PHC. On June 17, 1986, the two notes were transferred to the Community Bank of Germantown with the endorsement "Paneling and Home Center, Inc. by J. Steel Dollahite." The bank took the notes as security for a $35,000.00 personal loan to Mr. Dollahite, Sr., who, according to his uncontradicted testimony, used the money to pay a corporate debt of PHC.

In June of 1986, Elizabeth Soloff, a judgment creditor of PCA, filed this action. She claimed that the Dollahites, Hosse, and Lynch were liable to her under various theories of successor liability, including Tennessee's laws on bulk transfers, Tenn. Code Ann. § 47–6–101, et seq. (1979 & Supp.1988). Hosse and Lynch filed a cross-claim against the Dollahites and a third-party claim against the bank in which they admitted the execution of the two notes. Hosse and Lynch alleged that they had been notified by the bank that payments on the two notes should be made to the bank. They further alleged that the state had served them with a notice of levy for $26,-965.95 in back taxes due from PCA. Hosse and Lynch asked for the court's permission to pay the first note, then due, into court and for the court to decide which of the claimants was entitled to the money. On July 7, 1987, Hosse and Lynch paid the second note into the registry of the court.

After a hearing in the court below, the chancellor held that the bank was not a holder in due course of the two notes and that, as a consequence, the bank held the notes subject to the prior claims of the state and Ms. Soloff.

A. Is the bank a holder in due course?

Tenn.Code Ann. § 47–3–302 (1979) defines a holder in due course as one "who takes the instrument: (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." There is no contention in this record that the bank did not take the notes for value or in good faith. The dispute centers on the question of notice.

There are two facts which raise the notice question. The first is the fact that the state filed its notice of lien in the register's office of Davidson County on June 13, 1986, three days before the notes were negotiated to the bank. Is the recorded notice of lien on the assets of PHC notice to the bank of a claim against the two notes?

At one time, the courts of this state held that a holder who took a negotiable instrument under circumstances sufficient to put him on inquiry was deemed to have notice of prior equities that inquiry would have disclosed. *See Merritt v. Duncan,* 54 Tenn. (7 Hersk.) 156 (1872). However, the doctrine of constructive notice as applied to negotiable instruments was abolished in 1899 by the Negotiable Instruments Law. *Hamilton National Bank v. Swafford,* 213 Tenn. 545, 376 S.W.2d 470 (1964); *Hight v. McCulloch,* 150 Tenn. 117, 263 S.W. 794 (1924); *Bank v. Butler,* 113 Tenn. 574, 83 S.W. 655 (1904). The Negotiable Instruments Law provided that notice of a defect in the title of an instrument required "actual knowledge of the infirmity or defect, or knowledge of such facts that his [the transferee's] action in taking the instrument amounted to bad faith." 1899 Tenn.Pub. Acts 150, ch. 94, title 1, art. IV, § 56.

The Uniform Commercial Code deals with the question of notice by describing in detail situations which do and do not amount to notice to the transferee of a claim or defense affecting the instrument. *See* Tenn.Code Ann. § 47–3–304 (1979). Of greatest importance to the question involved in this part of the opinion is subsection (5) of Tenn.Code Ann. § 47–3–304:

The filing or recording of a document does not of itself constitute notice within the provisions of this chapter to a person who would otherwise be a holder in a due course.

In the official comments to this section, the drafters of the Code said:

Subsection (5) is new. It removes an uncertainty arising under the original Act as to the effect of "constructive notice" through public filing or recording.

■ The bank did not have actual knowledge of the lien. Therefore, we think it is clear that the state's recorded lien did not prevent the bank from becoming a holder in due course of the two notes in question.

The second fact that raises the notice question is the fact that Mr. Dollahite, Sr., the president of PHC, negotiated the notes to the bank to be held as security for his own personal debt. Subsection (2) of Tenn. Code Ann. § 47–3–304 provides:

The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.

On the surface, the facts seem to show that the bank clearly had notice of a possible claim against the instrument. A fiduciary is defined in Tenn.Code Ann. § 35–2–102(a)(2) (Supp.1988) as an agent or officer of a corporation. Mr. Dollahite was a fiduciary of PHC and it is undisputed that he negotiated the notes to the bank to secure a personal loan.

The bank argues, however, that all of subsection (2) has to be read together and that the language at the end of the section, "or otherwise in breach of duty," limits the application of the section to situations where the transferee of an instrument has knowledge that the transferor/fiduciary was violating his or her fiduciary duty when the transfer was made. In support of this contention the bank cites *McConnico v. Third National Bank in Nashville*, 499 S.W.2d 874 (Tenn.1973). The only factually similar transaction in that case involved the sole shareholder and president of a corporation who endorsed a check drawn to the order of his corporation and deposited the check in his own account at the defendant bank. The Supreme Court held that the bank became a holder in due course of the check because the bank did not have actual knowledge that the fiduciary was committing a breach of his fiduciary obligations.

In the course of the *McConnico* opinion, the Supreme Court said:

Both the Uniform Fiduciaries Act and the Uniform Commercial Code provide that knowledge that a person negotiating the instrument is or was a fiduciary does not in and of itself give the purchaser notice of a claim or defense. T.C.A. § 35–210 requires that a bank which receives a deposit or pays a check have *actual* knowledge that the fiduciary is committing a breach of his obligation as fiduciary or with knowledge of such facts as to amount to bad faith.

499 S.W.2d at 882 (citations omitted). With respect to the specific transaction pertinent to this case, the court said:

Again, we can find no evidence that the bank acted dishonestly or with notice of a claim as defined in § 47–3–304(2) T.C.A. The bank received the deposit in the regular course of business without any actual knowledge of a misappropriation by Hardison, if indeed there was a misappropriation. Without actual knowledge so as to show notice of a claim or defense and without "dishonesty" in the handling of the check as would evidence bad faith, or notice, the defendant bank was a due course holder of this check, and not liable to the Trustee in Bankruptcy.

*Id.* at 884.

■ We fail to see any meaningful distinction between the facts of this case and the pertinent transaction in *McConnico*. *McConnico* involved a check drawn to the order of the corporation, endorsed by the fiduciary, and deposited in the fiduciary's personal account. This case involves two notes made payable to the corporation and used by the fiduciary to secure a personal

loan. In either case, the transaction is equivalent to putting cash into the hands of the fiduciary in exchange for an instrument payable to the corporation. But, without actual knowledge that the fiduciary is committing a breach of his duty, the mere form of the transaction will not affect the transferee's status as a holder in due course. The official comments to U.C.C. § 3–304(2) say: "The purchaser may pay cash into the hands of the fiduciary without notice of any breach of the obligation." U.C.C. § 3–304(2), comment 5. *See also* Tenn. Code Ann. § 35–2–103 (1984).

Since the record shows that the bank took the two notes in good faith, for value, and without notice of any claim or defense against them, the bank is a holder in due course of the notes.

B. Is the state's lien superior to the rights of a holder in due course?

Under the Tax Enforcement Procedures Act, Tenn.Code Ann. § 67–1–1401 *et seq.* (1983 and Supp.1988), the state is given a lien for any unpaid taxes due the commissioner of revenue. The lien arises at the time of an initial assessment and continues until payment of the "taxes, fees, penalties, interest or costs"; and it attaches to all interests in the property of the person against whom the assessment is made. Tenn.Code Ann. § 67–1–1403(a). Tenn. Code Ann. § 67–1–1403(c) declares that, with certain exceptions, the lien is "superior to all liens and security interests created under Tennessee law." Tenn.Code Ann. § 67–1–1402(c) indicates that the Tax Enforcement Procedures Act prevails over inconsistent or different provisions of the code. (A proviso in Tenn.Code Ann. § 67–1–1402(c) concerning provisions dealing with the commissioner's tax collection authority is not relevant here.)

On the other hand, Tenn.Code Ann. § 47–3–305 (1979) provides that a holder in due course "takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt" except for five specified defenses. The state's lien for taxes is not among the five exceptions.

Superficially, the tax law may seem to conflict with the protection given to a holder in due course by Tenn.Code Ann. § 47–3–305. On closer reading, however, the apparent conflict disappears. Tenn.Code Ann. § 67–1–1403(c) generally makes the state's tax lien superior to liens and security interests in the property of the debtor. The interest of a holder in due course in a negotiable instrument is neither a lien nor a security interest, both of which require further processes for their enforcement. Rather, the interest of a holder in due course is the right to immediate enforcement or negotiation: "The holder in due course is nothing more than a highly refined species of bona fide purchaser who takes ... free of conflicting title claims to the instrument itself." J. White and R. Summers, *Uniform Commercial Code* § 14–1, at 456 (1st ed. 1972). Thus, the description in Tenn.Code Ann. § 67–1–1403(c) of the interests which will be defeated by the state tax lien does not include the interest of a holder in due course of a negotiable instrument.

We are persuaded that the conclusion we have reached is supported by the general policy of free transferability of negotiable instruments and the stated policy of the legislature in Tenn.Code Ann. § 47–1–104 (1979) that no part of the U.C.C. should be deemed impliedly repealed "if such construction can reasonably be avoided."

Our conclusions in the preceeding parts of this opinion render moot the other issues raised on appeal.

We reverse the judgment of the court below holding that the claims of the state and of Ms. Soloff in the proceeds of the two notes are superior to the interest of the bank. The cause is remanded to the Chancery Court of Davidson County for any further necessary proceedings. Tax the costs on appeal to the state and to Ms. Soloff equally.

TODD, P.J., and FRANKS, J., concur.