## SECURITY FINANCE COMPANY v. J. B. DUNCAN.

Middle Section.    July 28, 1927.

Petition for Certiorari denied by Supreme Court, December 3 1927.

1. **Bills and notes. Evidence. Where title of original holder is defective, the burden is on a later holder to show that he is an innocent purchaser.**
   If there is substantial evidence that the title of the original holder of notes was defective, the burden is on the plaintiff to prove that the notes were complete and legal upon their face; that it took them before they were overdue; that it took them in good faith and for value, and that at the time they were negotiated to it, it had no notice of any infirmity in the instruments or defects of the title of the person negotiating them.

2. **Bills and notes. Evidence. There must be actual knowledge of facts sufficient to put a person on guard before the above rule applies.**
   Mere suspicious circumstances, without actual knowledge of any infirmity or defect on the part of the holder will not defeat his title.

3. **Evidence. Burden is on the defendant to establish a special plea of non est factum.**
   Upon a special plea of non est factum the burden of proof is upon the defendant as a party who substantially asserts the affirmative of the issue.

4. **Evidence. The record of another case between different parties held inadmissible for showing fraud.**
   In an action to recover on certain notes where the record of another case between the plaintiff and other defendants was offered for the purpose of showing fraud, held that the connection between the cases was too remote because the jury to arrive at the conclusion of fraud, would have to base an inference upon an inference; and the record was inadmissible because the suit was between different parties and upon different issues.

5. **Evidence. Failure to offer a witness who had no connection with the transaction raises no inference against the party.**
   In an action on certain notes which were held by an innocent purchaser where the plaintiff failed to offer the agent who originally sold the goods for which the notes were given, held not to raise any inference against the plaintiff because the agent was in no way connected with the plaintiff.

6. **Fraud. Evidence. Proof of fraud must be clear, cogent and convincing.**
   In an action to recover on certain notes by an innocent purchaser where it was insisted that there was fraud between the original holder and the plaintiff, held that there was no evidence tending to establish fraud.

Appeal in Error from Circuit Court, Overton County; Hon. J. R. Mitchell, Judge.

Reversed.

E. C. Knight, of Livingston, and Roberts, McCarley and Roberts, of Nashville, for plaintiff in error.

E. D. White and G. H. White, of Livingston, for defendant in error.

DeWITT, J.   This was an action instituted in the circuit court by Security Finance Company, of Iowa City, Iowa, against J. B. Dun-

can, a merchant at Rickman, Overton county, to recover upon six promissory notes, dated April 1, 1925, aggregating $267, and interest, payable to the order of Brenard Manufacturing Company, of Iowa City, Iowa. These notes were alleged to have been given by J. B. Duncan for the purchase price of two phonograph instruments, styled "Golden Throated Claxtonolas," to be shipped to him by Brenard Manufacturing Company under a contract in writing alleged to have been signed by Duncan on April 1, 1925. The Security Finance Company, plaintiff, claimed to be the lawful owner and holder of said notes, having purchased the same from Brenard Manufacturing Company for a valuable consideration before maturity and without notice or knowledge of any equities which might exist between the original parties thereto. The defendant filed seven pleas, which are in substance as follows:

(1) Nil debit; (2) non est factum—but this plea also contains the averments that if the defendant did sign the notes his signature was procured by fraud and deceit; (3) that the merchandise ordered by defendant from the payee, the Brenard Manufacturing Company, was not accepted by defendant, and that, therefore, the notes were without consideration; (4) that the plaintiff is not the bona fide holder in due course, but is the Brenard Manufacturing Company under another name; (5) that plaintiff is a foreign corporation, and not qualified to do business under the laws of the State of Tennessee; (6) that there was collusion between plaintiff and the Brenard Manufacturing Company to cheat, wrong and defraud the defendant; (7) that the plaintiff and Bernard Manufacturing Company were engaged in a general scheme of fraud and "blue sky" deception.

A demurrer to the fifth plea was sustained and the said plea was stricken out.

The case was tried to a jury before the Circuit Judge. At the conclusion of all the evidence the plaintiff moved for a directed verdict in its favor, the amount being certain, but said motion was overruled. Thereafter the jury returned a verdict for the defendant. Motion was made by plaintiff assigning twenty-five grounds for new trial, one of which was the refusal of the Circuit Judge to grant said motion for a directed verdict. The motion for new trial was overruled. Plaintiff has appealed in the nature of a writ of error and has made numerous assignments of error.

It is insisted that the issues of fact should not have been submitted to the jury because a jury was not called for in the pleadings or on the first day of any term at which the suit stood for trial, and an entry was not made on the trial docket that the defendant called for a jury, as provided by Shannon's Code, section 4611. The only recital in the record referring to this matter is an entry upon the minutes as follows:

"When this case was reached for trial it was announced by defendant's attorney that this was a jury case; that a jury had heretofore been demanded, notwithstanding there is no order on the minutes of this court showing that a jury had been demanded, but there is a notation on the judge's docket (trial) showing that a jury had been demanded and the case transferred to the jury docket."

No exception was taken to this action in allowing a jury trial. Furthermore it was not made any ground of motion for a new trial. Under Rule 11 (4) of the Court of Appeals, this question will not be considered on this appeal. See also Hobbs v. State, 121 Tenn., 413, 118 S. W., 262.

The fundamental issues before the jury were, whether or not the plaintiff is a bona fide holder and innocent purchaser; and if not, were the notes subject to avoidance by the defendant for fraud or forgery in the procurement of them?

Certain facts are undisputed, to-wit: that the plaintiff Security Finance Company, is a corporation chartered in 1923 and organized under the laws of the State of Iowa, and having an authorized capital stock of $100,000; that on April 10, 1925 it was authorized to engage in and was engaged in the business among other things, purchasing, dealing in and selling all kinds of stocks, bonds, mortgages, notes and other evidences of debt and obligation of every kind and sort. That on April 10, 1925 it purchased of Brenard Manufacturing Company for the sum of $7400 a large number of promissory notes, aggregating in principal $8242.94, among them being all the notes sued on in this cause. The Brenard Manufacturing Company was a partnership composed of Theodore O. Loveland and James L. Records, of Iowa City, Iowa. The principal place of business of said Security Finance Company was at 114 South Clinton street in said city. No one connected with the Security Finance Company owned any interest in the Brenard Manufacturing Company, and no one connected with the Brenard Manufacturing Company owned any interest in the Security Finance Company. The notes sued on were sold to Security Finance Company by J. L. Records for Brenard Manufacturing Company. They bear the following endorsements stamped on them:

"Pay Security Finance Company or order, Brenard Manufacturing Company, Per J. L. Records."

"Pay any bank or banker, collection only, Security Finance Company, A. A. Welt, Pres."

"Pay any bank or banker, or order all prior endorsements guaranteed, Citizens Savings & Trust Company, Iowa City, Iowa, J. B. Vanhorn, Cashier."

These facts are positively testified to by Anson A. Welt, President and General Manager of Security Finance Company, and by Theo-

dore O. Loveland. Certain testimony hereinafter to be treated, is relied on as constituting material evidence in support of the verdict of the jury.

Section 59 of the Negotiable Instruments Act, Shannon's Code, section 3516a67 provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course."

Section 3516a63 provides: "The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto by fraud, duress or force and fear; or through unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

In Bank v. Hall, 119 Tenn., 548, 108 S. W., 1068, it was held that in an action on a note by the purchaser thereof against the makers, defended on the grounds that it was procured by the fraud of the payee, as established by the proof, and that the purchaser was not an innocent purchaser for value, the burden of proof rests upon the plaintiff to show that he was a holder for value.

Under section 3516a53 every negotiation is deemed prima facie to have been effective before the instrument was overdue, except where an endorsement bears date after the maturity of the instrument. If there is substantial evidence that the title of the Brenard Manufacturing Company was defective, the burden was on the plaintiff Security Finance Company to prove that the notes were complete and regular upon their face; that it took them before they were overdue; that it took them in good faith and for value; and that at the time they were negotiated to it, it had no notice of any infirmity in the instruments, or defects in the titles of the persons negotiating them.

Section 3516a64 provides: "To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith." Under this provision mere suspicious circumstances, without actual knowledge of any infirmity or defect on the part of the holder will not defeat his title. Bank v. Chapman, 122 Tenn., 415, 123 S. W., 641; Bank v. Russell, 124 Tenn., 618, 139 S. W., 734.

If there is substantial evidence that the title of Brenard Manufacturing Company was defective, then we must apply the above-quoted rules of placing the burden of proof upon the original plaintiff.

The original notes sued on, together with the original contract, bearing the alleged signatures of the defendant Duncan, are a part

of the record before us. The defendant in addition to plea of nil debt, filed a plea of non est factum as to the notes, which is in form a general plea of non est factum qualified as follows:

"That if the plaintiff holds any notes with the signature of this defendant to same, same was procured through fraud and deceit, in that, some person claiming to be the agent of the Brenard Manufacturing Company, the alleged endorsers of the notes, sued upon, wanted or asked defendant to give an order for some of their merchandise when defendant did give an order for same to be shipped on consignment, but immediately cancelled said order before the goods were shipped or started from the factory of the said alleged seller, the said agent saying that same was but an order for consignment and if he did not want the goods defendant could cancel and return the goods if not sold at any time. Defendant was very busy at the time said agent came to his place of business and if he procured defendant's name to some documents now alleged to be notes, same is and was a fraud and deceit upon defendant and he did not sign nor intend to sign any notes whatever so as to bind him in the premises."

The issue under this plea is not under the first part of the plea, in form a general plea of non est factum—"he did not execute said notes nor any one of them, nor authorize any one to execute same so as to bind him in the premises;" but it arises under the special portion of this plea above-quoted. The defendant never did testify that his signature to these notes was a forgery, for he admitted that he signed his name several times, although testifying that he did not know they were notes, and thought he was merely entering into a contract for consignment of the goods. When pressed to a definite statement, he said that he would not swear positively that he did not sign any of the notes or that he did sign them. He does insist that the signing was procured by fraud and deceit, but this would be an admission of the execution of the notes, therefore we must treat this plea as a special plea of non est factum. Upon such a plea the burden of proof is upon the defendant as the party who substantially asserts the affirmative of the issue. Brown v. Phelon, 2 Swan, 628; Carter v. Turner, 5 Sneed, 178, Douglas v. Brandon, 6 Bax., 60; Peevey v. Buchanan, 131 Tenn., 29, 173 S. W., 447.

If, however, the above-quoted plea is not a special plea because it does not definitely admit the signature to the notes, we will assume that the jury found that the signature to the notes was procured through fraud and deceit, and will determine whether or not there is substantial evidence to support said finding. In reaching such determination we will take into consideration all the evidence admitted in the court below, but limiting its probative effect to the issue between the plaintiff and defendant.

The defendant testified that on the evening of April 1, 1925, as he was closing his store about dark, one Bacon, agent for Brenard Manufacturing Company, came to him in an automobile and offered to give him an agency to handle phonographs sold by Brenard Manufacturing Company; that he offered to furnish the phonographs and records, and upon each sale to give to defendant forty per cent of the retail price; that his proposition was to ship to him two phonographs on consignment; that he, the defendant finally told him to send him two of the cheap ones, one at $50, and one at $75, and this was agreed to; that Bacon opened a book on the counter and told him to sign the order; that he took the pen and signed upon this representation; that he had been in business for ten years, doing business with travelling salesmen nearly every day and he never did take the pains to read an order; that he could not have read this order without lighting a light, and Bacon did not offer to let him read it; that Bacon told him that he had six months to sell the phonographs and if he did not sell them he could return them; that three or four days afterward he received from Brenard Manufacturing Company a large envelope containing a lot of papers, six or seven notes and a contract, and he folded them up and returned them by mail, with a letter telling them that he only agreed to take two machines on consignment; that when thus he read the order he saw that it provided for an absolute sale of the phonographs to him; that the agent said nothing to him about signing notes; and that he mailed these papers back to the Brenard Manufacturing Company in time for them to receive them by April 10, 1925, the date of the transfer of the notes to the Security Finance Company. He further testified that when the two phonographs arrived at Algood, the nearest railroad station, he refused to accept delivery of them, and that finally they were returned to Brenard Manufacturing Company under their direction.

This evidence was admissible to show fraud in the procurement of the contract, and it cast the burden on the plaintiff; but if there was no knowledge on the part of plaintiff of such fraudulent procurement, and there was no fraud or collusion between plaintiff and Brenard Manufacturing Company in the transfer of the notes, this evidence cannot affect the rights of the plaintiff. Although it tended to show a different contract from that expressed in the writing, it showed that the written contract was procured by fraud and therefore it would not be operative. McCallum v. Jobe, 9 Bax., 168, 22 C. J., 1215; Bank v. Barbee, 150 Tenn., 355, 265 S. W., 371; Jones on Evidence, (2 Ed.), sec. 1519. In 13 C. J., 769 it is said.

"It has been said that courts will not trouble themselves about fine distinctions in the admissibility of evidence when the purpose is to unkennel a fraud. Evidence of fraud must nevertheless be confined to the transaction and issue. Where the execu-

tion of a contract is alleged to have been secured through misrepresentation as to its contents, a party is properly allowed to state whether he would have signed it if he had known its terms, and whether he relied on the statement of the adverse party as to its contents.''

In some late cases, decided in Missouri, it has been said that if after the maker of a note has shown a defect in title, the purchaser proves a purchase without notice of the defect, the proof of the maker is thereby overcome and the purchaser's presumptive right to recover restored, the burden devolves on the maker to prove that the purchaser had actual knowledge of the defect, or such knowledge of facts that his action in taking the note amounted to bad faith. Union Station Bank v. Wangler (Mo. App.), 254 S. W., 739; Downs v. Horton, 287 Mo., 414, 230 S. W., 103; Pattonsburg Bank v. Koch (Mo. App.), 255 S. W., 580.

The details of the transfer and sale of the notes and the facts showing lack of collusion between Brenard Manufacturing Company and Security Finance Company have already been set forth. This testimony is not directly contradicted by other testimony.

The defendant offered in evidence and read to the jury, over the objection of the plaintiff the record in a suit styled Brenard Manufacturing Company v. Overton Supply Company, instituted in July, 1922 in the circuit court of Overton county. It was a suit by Brenard Manufacturing Company against four persons composing a partnership under the name of Overton Supply Company, none of whom were parties to this suit now pending. It was brought to recover on notes given for the purchase of three Claxtonola phonographs under a contract procured by a representative of Brenard Manufacturing Company named Connell. The defense was fraud and misrepresentation on the part of the agent in procuring the contract. There was a judgment for defendants which was affirmed by the Court of Civil Appeals. In this record was the oral testimony of several witnesses, showing fraudulent misconduct of the agent. It also contained the deposition of Loveland of the Brenard Manufacturing Company, showing that it was taken in October, 1922, at 224 East Washington street, Iowa City, Iowa, in the presence of a Notary Public. The ostensible purpose of the introduction of this record was to show that the place where Loveland's deposition was taken was the same place where Welt's deposition was taken in this cause now before us; and that therefore the two parties must have offices in the same building, and must be virtually one and the same concern. The testimony of the witnesses in that case must have tended to inflame the minds of the jury concerning matters not involved in the cause before us. In order for the jury to pass upon the fact that these two depositions were taken at the same place, and

conclude that the two concerns were one and the same, they would have first to infer from this mere taking of the depositions at the same place that the concerns had offices together or in the same building, and then draw from this an inference that they were virtually one and the same concern. This of course was not competent evidence and cannot be considered as substantial evidence, for it is well settled that an inference cannot be based upon an inference. Railroad v. Lindamood, 111 Tenn., 457, 78 S. W., 99. Furthermore, the reading of the testimony in the former case to the jury deprived the plaintiff of all opportunity for cross-examination. The two suits were among wholly different parties and upon different issues. The admission of this record was improper and in itself constituted reversible error for it must have materially affected the minds of the jury. 22 C. J., 428; Killingsworth v. Bradford, 2 Tenn., 204; McKinney v. Street, 107 Tenn., 526, 64 S. W., 482.

The fact that Bacon, the agent, was not offered by plaintiff as a witness could not affect the rights of the plaintiff, for there is no proof, direct or circumstantial, that he had anything to do with the sale and transfer of the notes in Iowa, or knew anything about the relations between the two concerns. Loveland testified that Bacon was no longer in their employ, that he did not know where he was, but that his last information was that Bacon was in Kingston, Tennessee. What advantage it would be to defendant for Bacon to testify when defendant had given the strongest possible testimony as to Bacon's conduct, and it was not controverted, we are unable to understand.

An insistence is made in behalf of the defendant that the proof shows that the Brenard Manufacturing Company never made any effort to have the notes collected until after they were sold; that the Security Finance Company showed no interest in the collection of the notes until it brought this suit; and that therefore the real plaintiff or party in interest is the Brenard Manufacturing Company, and the sale of the notes was a sham. We wish to test all of this evidence in the light most unfavorable to the plaintiff in error for we must do so upon an appeal in the nature of a writ of error, in determining whether or not the trial judge was in error in overruling the motion of plaintiff for peremptory instructions. But as to no effort being made to collect until after April 10th, it must be remembered that the notes had only been executed ten days before that time and none of them were due, and consequently the time had not come to make any effort to collect the notes. On the other hand, when the first note came due the Security Finance Company wrote to the defendant that it held these notes, that the first note would be due on a certain date, and that it would be forwarded through banks for collection. We cannot see anything substantial in these facts. The only effect of the use of them might be to cast a sort of sus-

picion, and mere suspicion is insufficient. The notes themselves show that they were transferred to the Security Finance Company and forwarded for collection.

The defendant relies again upon what his counsel terms "the unsurmountable circumstances of the Brenard Manufacturing Company ordering a return of the shipment after the defendant repudiated or discovered the fraud and forgery of the notes, reclaiming said shipment as its property."

The goods were duly tendered at Algood, the nearest railway station for delivery, until so refused. They remained in the railroad station about two months. They were ordered to be returned evidently because the prospect of effecting delivery was hopeless. Now whether or not the Brenard Manufacturing Company complied with the provisions of the Uniform Sales Act under such circumstances, is not in issue in this cause, nor is there any circumstance shown which in any way tends to connect the Security Finance Company with this return of the goods. Certain witnesses, Odle, Winningham and Taylor, were allowed over objection, to testify that the "business reputation" of the Brenard Manufacturing Company was bad in Overton county; and that its agent or agents had been guilty of fraudulent transactions with other people relating to other matters in said county. It is insisted that it was error for the trial judge to admit this testimony as relating to res inter alios acta; and as not the kind of character evidence that is admissible. This testimony related alone to Brenard Manufacturing Company, its character and its transactions through its agents. It did not purport to connect the Security Finance Company with such matters, except by the strained inference that a concern of such fraudulent character would be likely to use another concern as a mere dummy for the transfer to it of paper and sue on it under the guise of an innocent purchaser. The Security Finance Company is charged with fraud in that it did not actually purchase this paper without knowledge of defects of title and then it brought suit upon this paper claiming to be an innocent purchaser. Now the proof of fraud must be clear, cogent and convincing as is too well settled to require citation of authorities. As aforesaid, there is no direct proof contradicting the plain, clear statements of Welt and Loveland as to the sale and transfer of the notes, and as to the complete independence of the two concerns of each other; as well as the lack of knowledge of Security Finance Company of any defect in the title. The attack made upon this evidence was by the use of evidence which was either inadmissible or lacking in such quality as to be real substantial evidence, that is having real substance or relevant consequence. The jury were evidently confused as to the issues. All through the trial an inflammatory emphasis was placed upon the alleged fraudulent conduct of Brenard Manufacturing Company through its agent. All distinction between

Security Finance Company and Brenard Manufacturing Company was studiously avoided. The fraudulent misconduct of the agent was attributed to Security Finance Company as if there were some real proof that it knew of or had anything to do with such conduct. We must take the case as it appears upon the record and apply to the facts shown, the well settled rules of law which have been fully stated in this opinion. The law of negotiable paper constitutes a series of strict rules which by the consensus of the best opinion, based upon centuries of experience, are necessary to acquire a regularity in carrying on commercial transactions. If the Security Finance Company is identical with Brenard Manufacturing Company, or has acted as a mere dummy, or has entered into fraudulent collusion with it, or had any knowledge of defects of title when it took the paper, there is no competent or material evidence in this record to show it. Taking the testimony of the defendant, it is evident that he was victimized and that a judgment against him on these notes would work a serious hardship; but we cannot out of mere sympathy or sentiment, relieve him when it is shown that the Security Finance Company is a bona fide owner and holder of the notes for value in due course of trade.

A certain line of argument before the jury by counsel for the defendant is complained of as improper because it embodied inferences upon which no basis can be found in the evidence. It is true that counsel stated to the jury that the members of the Brenard Manufacturing Company were stockholders in Security Finance Company, and vice versa; that the whole matter could be adjusted by the jury giving a verdict for the defendant and then the Security Finance Company would compel the Brenard Manufacturing Company to make settlement. This is the substance of the statements. It is true that counsel have a rather wide latitude in drawing inferences in argument before a jury; but some of these statements were exceedingly strained—however, they embodied mere inferences or assumptions, of the weight of which the jury could judge. The record itself, however, showed that counsel for the defendant in his argument to the jury did make a statement which was very improper and which is only noticed here under Rule 12 of this court, as it is not complained of in any assignment of error. The court does not mean any reflection upon counsel, but merely means to say that in saying to the jury that in the Overton Supply Company case he represented the Brenard Manufacturing Company and that he refused thereafter to represent them because he found them to be "absolutely a gang of rascals and thieves," he was undertaking to give testimony when not under oath and not on the witness stand. It is true that the court sustained an objection to this remark, but such a statement volunteered by so reputable a lawyer in the course of his argument was so calculated to impart prejudice to the jury, that

even the action of the trial judge could not cure it. The trial judge did not go further and specifically instruct the jury to disregard this remark.

We are therefore of the opinion that the judgment of the circuit court is erroneous; that the plaintiff was, under the competent testimony, entitled to a judgment in its favor upon the notes, and that the trial judge should have granted the motion of plaintiff for peremptory instructions; and that he should have granted a new trial and then entered a judgment under the motion for peremptory instructions. Barnes v. Noel, 131 Tenn., 126, 174 S. W., 276.

The facts shown in the trial as to fraud of the agent in procuring the contract and notes were material as to defect in the title of Brenard Manufacturing Company; but notwithstanding this, they were not determinative as to the rights of the Security Finance Company. "Facts are frequently material which are by no means determinative; and facts are frequently material in themselves, but become immaterial when taken in connection with other facts." Traction Co. v. Brown, 115 Tenn., 323, 331, 89 S. W., 319.

The judgment of the circuit court is reversed. The facts, in our opinion, showing clearly a right of recovery on the notes in favor of Security Finance Company against J. B. Duncan, for principal, interest, and attorney's fee of $25, plus fifteen per cent of the total amount, the court will render judgment for the aggregate of said sum, without remand for a new trial. Madigan-Walsh Co. v. McLean, 2 Hig. (Tenn. C. C. A.), 693; 26 R. C. L., p. 1073; Hardware Co. v. Hodges, 126 Tenn., 370, 378, 149 S. W., 1056; Humpston v. Insurance Co., 148 Tenn., 439, 256 S. W., 438. The judgment will also include all costs of this cause.

Faw, P. J., and Crownover, J., concur.