LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* FEDERAL
RESERVE BANK OF ATLANTA (NASHVILLE BRANCH),
*et al.**

(*Nashville.* December Term, 1927.)

(Opinion filed November 23, 1928.)

### 1. BANKS AND BANKING.  NEGLIGENCE.

A collecting bank, taking for collection checks payable at a distance, is guilty of negligence in sending such checks direct to the bank upon which they are drawn.  (Post, p. 500.)

Citing: Winchester Milling Company v. Bank of Winchester, 120 Tenn. (12 Cates), 225.

### 2. BANKS AND BANKING.  RULE OF FEDERAL RESERVE SYSTEM.

Whether the power of the Federal Reserve Bank to make a rule under authority of an act of Congress, authorizing the Federal Reserve Bank to prescribe rules for the conduct of its business, which would in effect absolve a collecting bank from liability under Tennessee Rule of Law, is reserved, being in this case unnecessary to a decision.  (Post, p. 500.)

### 3. BANKS AND BANKING.  DAMAGES.  NEGLIGENCE.

In a suit for damages for negligence of a bank in the collection of a check intrusted to it for that purpose, actual damage must be alleged and proven.  Such a suit is to be treated as an action in assumpsit, sounding damages, for a breach of the bank's implied contract to use due diligence to collect the check, or an action on the case for negligence in respect to the duties imposed by .

---

*On measure of damages for breach of duty by bank in respect to collection of commercial paper, see annotation in 1 L. R. A. (N. S.), 246; 19 A. L. R., 555; 3 R. C. L., 631; 4 R. C. L. Supp., 209.

As to liability of bank taking paper for collection in sending it direct to drawee bank, see annotation in 27 L. R. A., 248; 18 L. R. A. (N. S.), 441; 52 L. R. A. (N. S.), 648-652; 19 A. L. R., 593; 3 R. C. L., 627; 1 R. C. L. Supp., 867; 4 R. C. L. Supp., 209; 7 R. C. L. Supp., 100.

157 Tenn.—32.

law in consequence of such bank's having received the check for collection. (Post, p. 501.)

Citing: Jefferson County Savings Bank v. Hendrix, 147 Ala., 670; 1 L. R. A. (N. S.), 246.

### 4. BANKS AND BANKING. NEGLIGENCE. DAMAGE. BURDEN OF PROOF.

The **onus** is upon the plaintiff to show negligence of a collecting bank, and loss resulting in consequence. One having selected the bank as an agent for the collection of its claims, when it seeks to hold the agent liable for non-collection, it must show that the claim was good and collectible. (Post, p. 503.)

Citing: Bruce v. Baxter, 75 Tenn. (7 Lea), 477; Collier v. Pulliam, 81 Tenn. (13 Lea), 114-118; Sahlien v. Bank, 90 Tenn. (6 Pickle), 221, 232. Other cases cited in Note 1, L. R. A. (N. S.), 246.

### 5. BANKS AND BANKING. DAMAGES. NEGLIGENCE OF AGENT.

It is a good excuse that the misconduct of the agent has been followed by no loss or damage whatever to the principal; for then the rule applies that although it is a wrong, yet it is without any damage; and to maintain an action both must concur, for **damnum absque injuria** and **injuria absque damno** are, in general, equal objections to any recovery. In order for a principal to hold collecting banks for loss alleged to have resulted from sending the items direct to the payer bank, the principal must show that there would have been no loss had these items been sent for collection to another bank. (Post, p. 503.)

Citing: Story on Agency, 236; Morse on Banks and Banking (5 Ed.), Sec. 236a; 3 R. C. L., 628; Givan v. Bank of Alexandria (Tenn. Court of Chancery Appeals), 52 S. W., 923; 47 L. R. A., 270.

### 6. BANKS AND BANKING. CHECKS, PRIORITY OF PAYMENT.

No payee has a right to demand that his check be given priority over a check that came in full payment earlier in the day. When a bundle of checks is presented, all must be paid, or none. The payer bank is not entitled to select checks for payment, if funds to pay all are insufficient. (Post, p. 504.)

Citing: Morse on Banks and Banking, secs. 354, 450; 7 C. J., 681.

7. **BANKS AND BANKING. CASHIER'S CHECK.**

A cashier's check is not an assignment of a fund, but only evidence of indebtedness on the part of the bank. It is not entitled to any priority over checks of the bank's customers. (Post, p. 505.)

Citing: Clark v. Chicago Title & Trust Co., 186 Ill., 440; 53 L. R. A., 232.

8. **BANKS AND BANKING. DAMAGES. NEGLIGENCE.**

It cannot be said that a depository bank would have honored and paid one of its checks, when the fact is that there was no time while the bank remained open that it had sufficient cash resources to take care of the check after payment of the checks previously presented. (Post, p. 505.)

9. **BANKS AND BANKING. DAMAGES. NEGLIGENCE.**

When a bank, receiving a check for deposit, exercises due diligence in the selection of an intermediate bank for the collection of the check, it discharges its duty to its customers. The intermediate bank so selected becomes the agent of the customer, and the owner of the paper has a right of action against the intermediate bank if the debt be lost by the negligence of the agent so selected. (Post, p. 507.)

Citing: Bank v. Cummings, 89 Tenn. (5 Pickle), 609; Givan v. Bank of Alexandria, 47 L. R. A., 270; Winchester Milling Company v. Bank of Winchester, 120 Tenn. (12 Cates), p. 225.

---

## FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Judge.

A. W. Stockell, Jno. E. Garner, Ed. T. Seay and John B. Keeble, for complainant, appellant.

John J. Vertrees, E. J. Smith and Bass, Berry & Sims, for defendant, appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

*(1)* This suit was brought by the Louisville & Nashville Railroad Company against the Federal Reserve Bank of Atlanta (Nashville Branch) and the American National Bank of Nashville to recover the amount of three checks on a Springfield bank deposited by the Railroad Company with the National Bank and cleared by that bank for collection through the Federal Reserve Bank. The Federal Reserve Bank sent these checks directly to the Springfield bank upon which they were drawn for payment. The Springfield bank was closed before any remittance was made on account of said checks and was wound up as an insolvent institution. The basis of the suit is the rule of law announced in *Winchester Milling Company* v. *Bank of Winchester,* 120 Tenn., 225, and other cases, that a collecting bank, taking for collection checks payable at a distance, is guilty of negligence in sending such checks direct to the bank upon which they are drawn.

*(2)* The chancellor, while conceding that the law had been so declared in Tennessee, was of opinion that the collecting banks in this case were absolved by reason of a rule of the Federal Reserve System which authorizes Federal Reserve Banks to forward checks entrusted to them for collection direct to the payer bank. Such rule having been made under authority of an Act of Congress authorizing the Federal Reserve Bank to prescribe rules for the conduct of its business, the chancellor thought that said rule had force of a Federal statute and superseded the State law. This conclusion has been sharply chal-

lenged in this court and the power of the Federal Reserve Bank to make a rule with such an effect has been ably discussed and many authorities bearing on the question pressed upon our attention.

A careful analysis of the proof offered, the facts of the record, precludes, or at least renders unnecessary an attempt to resolve this controversy. Regardless of any negligence that might be imputed to the collecting banks before us, the case of the Railroad Company must fail.

(3) The American National Bank was a depository of the Louisville & Nashville Railroad Company. Agents of the Railroad Company within a designated territory were required each day to forward the receipts of their offices to the American National Bank for deposit. It was the custom of the agent at Springfield to take his receipts every day to the Peoples Bank at Springfield and exchange them for a cashier's check drawn on said bank. The cashier's check would then be sent to the American Bank to be credited on the Railroad Company's account with that institution.

Three such cashier's checks amounting to $3,995 are involved in this suit. They were deposited according to custom with the American National Bank and that bank cleared them through the Nashville Branch of the Federal Reserve Bank of Atlanta. No undue delay is charged against either bank in forwarding the checks to Springfield. There were three other banks in Springfield besides the Peoples Bank, and the contention of the Railroad Company is that the Federal Reserve Bank should have, in the exercise of due care, sent these checks to one of the other banks for presentment.

It was the custom of the Federal Reserve Bank at Nashville to send to each bank in Springfield daily all the

checks coming into the. hands of the Federal Reserve Bank drawn on such Springfield Bank.

On July 9, 1924, the Federal Reserve Bank sent a cash letter to the Peoples Bank of Springfield containing checks amounting to $9696.26 drawn on the latter concern. This letter reached the Springfield bank July 10. It contained two of the checks here involved. On July 10 a similar letter containing checks so drawn amounting to $11,944.24 was sent in the same manner. This letter reached the Springfield bank July 11 and contained the other check here involved. The Springfield bank remained open up to and including July 14. No remittance was made to the Federal Reserve Bank on account of either of the cash letters just mentioned.

The testimony of a former bookkeeper of the Springfield bank is offered on behalf of the Railroad Company in which he points out that the Springfield bank transacted business as usual on July 10, 11, 12 and 14. July 13 was Sunday. He says that so far as he knows all checks presented at the counter of the Springfield bank during these days were duly paid. The argument for the Railroad Company is that the checks drawn in its favor would have been paid had they been sent to another bank for collection and presented. We are not satisfied that this argument is well founded.

In a suit for damages for negligence of a bank in the collection of a check entrusted to it for that purpose, actual damage must be alleged and proven. Such a suit is to be treated as an action *in assumpsit,* sounding damages, for a breach of the bank's implied contract to use due diligence to collect the check, or as an action on the case for negligence in respect to the duties imposed by

law in consequence of such bank having received the check for collection. *Jefferson County Savings Bank* v. *Hendrix* (Ala.), 1 L. R. A. (N. S.), 246.

Speaking of a like situation, this court said:

*(4)* "The *onus* was upon the plaintiff to show negligence of defendant and loss resulting to itself in consequence. Having selected an agent for collecting its claims, which it seeks to hold liable for non-collection, it must show that the claim was good and collectible. *Bruce* v. *Baxter*, 7 Lea, 477; *Collier* v. *Pulliam*, 13 Lea, 114-118." *Sahlien* v. *Bank*, 90 Tenn., 221, 232.

The same conclusion was reached by the Supreme Court of Alabama upon a careful consideration of authority. *Jefferson County Savings Bank* v. *Hendrix, supra*. See other cases in accord collected in Note 1, L. R. A. (N. S.), 246.

Judge STORY states the law this way:

*(5)* "It is a good excuse that the misconduct of the agent has been followed by no loss or damage whatsoever to the principal; for then the rule applies that although it is a wrong, yet is without any damage; and to maintain an action both must concur, for *damnum absque injuria* and *injuria absque damno* are, in general, equal objections to any recovery." Story on Agency, 236.

In order, therefore, for the Railroad Company to hold these collecting banks for the loss alleged to have resulted from sending the items in question direct to the payer bank, the Railroad Company must show there would have been no such loss had these items been sent for collection to another of the banks in Springfield. Morse on Banks and Banking (5 Ed.), sec. 236a; 3 R. C. L., 628; *Givan* v. *Bank of Alexandria* (Tenn.), 52 S. W., 923; 47 L. R. A., 270.

(6) When the cash letter amounting to $9696.26, containing two of the checks involved, reached the Springfield bank on July 10, there were two similar cash letters of earlier date from the Federal Reserve Bank on the counter of the Springfield bank containing checks on the latter bank awaiting payment aggregating $56,825.74. On this day its books show that the Springfield bank had cash resources, money, cash items and bank balances amounting to $37,271.44. Of this amount, $10,657.11 seems to have been money of the Springfield bank on deposit with other banks "under contract" and therefore not immediately available. So that the total cash resources of the Springfield bank, applicable to the payment of checks, were $26,614.33. So manifestly the Springfield bank could not have paid the items contained in the cash letter which reached Springfield July 10, no matter how such items were presented, unless said items were given precedence over other items previously presented and entitled to priority of payment.

On July 11 when the cash letter from the Federal Reserve Bank with items amounting to $11,944.24 and containing the other check here involved reached the Springfield bank, the cash resources of the latter Bank, exclusive of the $10,657.11 on deposit under contract, amounted to $32,292.41. There still remained unpaid on the counter of the Springfield bank, in addition to the $9696.26 letter, checks drawn upon it aggregating $33,482.97, which checks had been previously presented and were entitled to be paid before any of the three checks here involved. So that the items contained in the cash letter which reached Springfield on July 11, including the third item here involved, could not have been paid, however pre-

sented to the Springfield bank, except as the result of an unlawful preference.

There was no time after the three checks reached Springfield and up to the closing of the Peoples Bank when there were not checks on the counter at that bank, presented before any of the Railroad Company's checks, of an aggregate amount exceeding the cash resources of the payer bank. Checks must be paid in the order in which they are presented. No payee has a right to demand that his check be given priority over a check that came in for payment earlier. Morse on Banks and Banking, secs. 354, 450; 7 C. J., 681.

When a bundle of checks is presented through a clearing house, all must be paid, or none. The payer bank is not entitled to select checks for payment, if funds to pay all are insufficient. Morse on Banks and Banking, sec. 354.

*(7)* A cashiers' check is not an assignment of a fund but only an evidence of indebtedness on the part of the bank. It is not entitled to any priority over checks of the bank's customers. *Clark* v. *Chicago Title & Trust Co.,* 186 Ill., 440; 53 L. R. A., 232.

*(8)* No matter, therefore, how the three checks with respect to which suit is brought had been presented to the Peoples Bank, whether they had come directly or through another bank at Springfield, there was not a time while the Peoples Bank remained open that it has sufficient cash resources to pay these checks after paying checks previously presented.

The Railroad Company could not have expected the Federal Reserve Bank to have handled these cashier's checks separately. The utmost contention must be that the Federal Reserve Bank should have sent all the checks accumulated each day on the Peoples Bank to another

bank in Springfield for collection. Had this course been followed and had the cash letters from the Federal Reserve Bank, one for $9696.26 and the other for $11,944.24, reaching Springfield July 10 and July 11, respectively, been sent to another bank in that place, the proof wholly fails to show that any such amount of demands could or would have been paid by the Peoples Bank upon presentation. As above seen, the items in each letter must have been paid in full. Particular items could not have been selected for payment. The collecting bank in Springfield would have been without authority to permit preferences.

There is no showing that those in charge of the Peoples Bank would have attempted to prefer items presented through a local bank to items presented by cash letter from an out of town bank and earlier on the counter. At any rate the Railroad Company had no right to the payment of its cashier's checks until all checks drawn on the Springfield bank and previously presented had been paid. Having no right to preferential payment, there was no correlative duty upon any agent to attempt to procure for the Railroad Company such a preference. An agent cannot be held because he fails to procure for his principal something to which the latter is not entitled. There is no predicate for actionable negligence unless some legal right is invaded or lost.

In referring to the financial condition of the Peoples Bank on the days immediately before its failure, we have discussed its resources as though its bank balances were real. As a matter of fact, these balances were fictitious according to the record, the result of kiting operations. Had the Federal Reserve Bank sent its checks on the Peoples Bank to another bank in Springfield, reaching Springfield July 10 and July 11, there was not enough

money in the Peoples Bank on either day to have paid such checks. Any payment must have been made by exchange. It is a bare conjecture to say that any apparent balance of the Peoples Bank in another bank would have stood up until a draft issued by the Peoples Bank on July 10 or July 11 could have reached its correspondent.

(9) In this State, when a bank receiving a check for deposit exercises due diligence in the selection of an intermediate bank for the collection of the check, the depository bank discharges its duty to its customer. The intermediate bank so selected becomes the agent of the customer and if the debt be lost by the negligence of this agent so selected, the owner of the paper has a right of action directly against such agent. *Bank* v. *Cummings,* 89 Tenn., 609; *Givan* v. *Bank of Alexandria, supra; Winchester Milling Co.* v. *Bank of Winchester, supra.*

Unless, therefore, the choice of the Federal Reserve Bank to make the collection of the checks in question involved negligence on the part of the American National Bank, there seems no basis for a suit on this account against the latter institution. It would be too strong a thing to say that a National bank is guilty of negligence in clearing through a Federal Reserve bank, particularly when the testimony of the officers of the National bank showed that such officers were not advised as to the particular method employed by the Federal Reserve bank in making collections.

For the reasons stated the decree of the chancellor must be affirmed.